SOLLIDAY v. BISSEY.

12 347
e196 193

1. Legatee of the income to be derived from a fund, may maintain an action at law against the executor, who, on settlement of his accounts, retains the fund for the purposes of the will.

2. Interest is chargeable on the arrears, and, it seems, at the rate of six per cent. per annum, unless the money was actually invested at a lower rate.

3. No commissions or compensation is chargeable by the executor on such income.

4. Such executor may set off rent due to himself and another, on a lease made by them as executors of another estate, to the plaintiff, the co-executor assenting to such set-off.

IN error from the Common Pleas of Bucks.

*Dec. 26.* Samuel Solliday, by his will proved in 1830, bequeathed to his wife the income of $900, to be paid to her yearly, and appointed J. Solliday and Boileau his executors. J. Solliday settled an account, in which he claimed to retain $600 under the above-recited provision of the will. This action was brought against him alone, to recover the interest on the fund retained at 6 per cent. After the commencement of the suit the plaintiff married Bissey, who joined as a plaintiff.

On the trial the defendant, with the consent of Boileau, offered to prove, under his plea of set-off, that the plaintiff was indebted to himself and Boileau for rent of premises leased to her by them, as executors of another estate, which the Court rejected.

As to the interest on the arrears, there was evidence that the defendant had loaned the plaintiffs money for a part of the time he held it, at 6 per cent.; and there was no evidence of any other investment of that fund by him. It was also in evidence that 6 per cent. was paid by persons in the neighbourhood, in three instances, for loans, during the time the plaintiff had the money, but the usual rate was shown to be 5 per cent. per annum. The plaintiff also read receipts in full by plaintiff, up to a certain time, which showed that but 5 per cent. had been paid her up to that date.

The points as to which there were exceptions, were: 1. That the defendant was entitled to commissions on the income, or compensation for taking charge of the fund. 2. That, if the usual rate of interest was 5 per cent., the income must be calculated at that rate. 3. That interest on the income could not be claimed. 4. The Orphans' Court has exclusive jurisdiction.

KRAUSE, J., instructed the jury on these points as follows (in

other respects negativing the defendant's prayers for instructions):

"Under this evidence, if the jury believe it, the defendant is bound in law to pay plaintiff 6 per cent., on the fund to be in his hands for her use, when the jury find the interest unpaid, and also interest at that rate on each annual sum in arrear from the time it fell due—* * *   The defendant also claims commissions for responsibility and labour in collecting, taking care, and paying over to plaintiff, prior to 4th October, 1840, this annual income of $600, as a deduction in his behalf from what is in arrear.   The Court, however, instruct the jury that a fund like this is the "annuitant's bread," and to carve commissions out of it would, in many cases, reduce her to discomfort and suffering.   Her allowance is not always liberal, even where the estate from which it is made is large, especially where the children are numerous.   Where the executor is to pay it, as in this case, he knows what he undertakes at the probate of the will, and what compensation he may expect when he asks such probate.   He gets full commissions for executing the will, and the testator does not contemplate giving him more out of the allowance made to his widow.   The English rule is not to compensate for such services; and though we give compensation to trustees as a general thing, no reason is perceived arising out of our American condition, for introducing one opposite to it.   There the trustee of such a fund is held in the light of a friend, exercising one of those friendly offices, without remuneration, which are incidental to social life; and a more mercenary temper in our people than in the mother country, can scarcely be affirmed.   There can, therefore, be no greater difficulty here than there, in procuring trustees to manage such fund for annuitants, especially where they are appointed by the will, and entitle themselves to commissions on the estate by accepting the office of executor.   But if it should be otherwise in particular cases, and things should come to the worst, some one may be expected to be found who still retains enough of natural friendship, or affection, or sympathy with the beneficiary, to take the fund in charge, or at least to allow himself to be made the instrument of the Court for investing it under the 14th section of the Act of 1832, making the interest payable to her without asking his intervention at each payment.   The Court, therefore, instructs the jury that the defendant is not entitled to such commissions under the evidence in the case."

*S. L. Roberts*, for plaintiff in error.—The right of action for the

rent was personal, for it was on their contract; with the trust strangers had nothing to do, and hence it could be set off: 8 S. & R. 402; 10 Ib. 10; 1 Pa. 422; 2 Ib. 490; 3 Binn. 557; 2 Rawle, 185; 5 Ib. 137; 5 Barr, 508. The consent of Boileau avoids all objection on the score of his interest: 5 Whart. 379; 7 Watts, 464.

The testator by income meant the usual rate of interest, and there can be found but three cases in which more than 5 per cent. was paid for loans in that vicinity: 5 Barr, 87. Nor was interest chargeable on the arrears, for it would be compounding interest: 2 Rawle, 305; 5 Ib. 323; 7 W. & S. 48; 5 Barr, 87.

That commissions or compensation is always allowed to trustees, seems settled: 3 Wash. C. C. 434; Bald. 163; 4 Whart. 389; 4 Watts, 77; 5 Barr, 413; 2 Stor. Eq. § 1268, n.; 16 Mass. 22; 1 Pick. 147; 15 Ib. 471. The Orphans' Court had exclusive jurisdiction: 1 Watts, 229; 1 Penn. 282; 2 Rawle, 301.

*Michener* and *Du Bois*, contrà.—There was no contract or dealing between the parties, and the debt was due to another jointly and in another right, hence it could not be set off: 12 S. & R. 60; 2 Whart. 98; 5 Cr. 34; 3 Yeat. 267; if the defendant had a certificate the execution would entitle him alone, whereas another is interested.

*Jan.* 28. ROGERS, J.—We think the Court was in error in refusing evidence of set-off. The testimony is offered by the defendant Solliday, with the assent of the co-executor Boileau, so that the objection that it is not between the same parties, otherwise fatal, is removed. The defendant brings himself within the benefit of the principle settled in Tustin v. Cameron, 5 Whart. 379; Wrenshall v. Cook, 7 Watts, 464. It is ruled that in an action on a promissory note given by the defendant in favour of the plaintiff, the defendant may set off a debt by the plaintiff to a company or partnership of which the defendants were members, the other members of the partnership authorizing the same. The case must therefore be considered aside of this exception, and the only remaining obstacle in the way of the defendant is the objection that the money offered to be set off was due to Solliday and Boileau, as executors. In this view of the case, it is an important point that the property was leased to the plaintiff after the death of the testator, and although to them, as executors, yet the debt is due on their own contract, and in their own right. In all cases of promises, express

2 G

or implied, made to or by an administrator after the death of an intestate, and the same holds as to executors, the action lies by and against the administrator, personally: 8 S. & R. 402; 10 Ib. 10; 2 Penna. 490; 3 Barr, 567; 2 Rawle, 185; 5 Ib. 137.

Those exceptions being removed, the case presented falls within the principle decided in Wolf v. Beals, 6 S. & R. 244. It is a general rule, as there truly said, that a person having the right of action may set off a debt due to him as a trustee against a debt due by him in his own right. The rule clearly deducible from Wolf v. Beals is, that persons having a right of action, or perhaps the right of property, are entitled to set off. Thus a debt to a party as trustee, or a certain given trust, may be set off in an action against either. Here Solliday and Boileau act in the capacity of trustees for the beneficiaries, and may unquestionably maintain suit in their own names, disregarding the appellation of executors, which may be considered as surplusage.

Three exceptions are filed to the charge, all of which we have examined and found untenable. The charge we deem correct in every particular, and affirm it for the reasons so clearly given by Judge Krause. As, however, the Court erred in rejecting evidence of set-off, the cause must be remanded for another trial.

Judgment reversed, and *venire de novo* awarded.