## Buckley *et al. versus* Garrett *et al.*

1. If a debtor at or immediately after the execution or assignment of a mortgage on his property to a creditor, transfer a policy on the mortgaged premises, though nothing be expressed at the time, or it be transferred as collateral security generally, it is a conclusion of law from the nature of the transaction, that the policy is collateral security for the mortgage.

2. It would require evidence of an express understanding to authorize the assignee to apply the amount of insurance received for a loss to any other debt or liability.

3. Farnum held a mortgage against Buckley, who had an insurance on the mortgaged property. Buckley at the same time owed a judgment to Garrett, who at the request of Buckley took an assignment of Farnum's mortgage, and as additional security Buckley's wife gave Garrett a mortgage on her own estate. Buckley at the same time assigned to Garrett the policy of insurance as "collateral security" generally. *Held,* that the insurance

[Buckley *v.* Garrett.]

money after a loss must be appropriated to the wife's mortgage, and could not be appropriated to Garrett's judgment.

January 18th 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., absent. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Chester county* : No. 80, to January Term 1869.

This was a scire facias on a mortgage, issued May 20th 1862, by John Garrett and another, partners as Garrett & Martin, against James Buckley and Sarah Ann his wife.

The case had been tried before and judgment rendered for the plaintiffs ; that judgment was reversed by the Supreme Court (11 Wright 280). Afterwards Mrs. Buckley died, and Edmund D. Buckley her executor and others her devisees, were substituted.

The case was tried the second time, May 11th 1868, before Butler, P. J.

The history of the case is about as follows :—On the 30th of September James Buckley was owner of a factory and tract of land in Chester county, on which there were three mortgages, the third being to Farnum & Co. for $3000. There was at the same time an insurance for $6000 in The Royal Insurance Company of Liverpool on the machinery, &c., of the factory. Buckley on that day confessed a judgment to the plaintiffs for about $14,000, for which he was indebted to them. In March 1860, Farnum & Co. had placed their mortgage in the hands of their attorney for collection, but were willing to give Buckley time upon the payment of $1000. At the request of Buckley, the plaintiffs advanced the $1000, Farnum & Co. assigning to them one-third of their mortgage. On the 28th of March 1860 Buckley executed to the plaintiffs a bond for $1000, payable in a year, and he and his wife gave a mortgage on her own real estate to secure the payment of the bond. On the 31st of March Buckley assigned to the plaintiffs " as collateral security" generally his interest in the policy of insurance. On the 2d of April the plaintiffs gave a certificate that Mrs. Buckley's mortgage was collateral security for one-third of the Farnum's mortgage assigned to them, and on the same day agreed in writing that Farnum & Co. were to keep their mortgage, collect the $2000 and then hand it to the plaintiffs. The factory covered by Farnum's mortgage was burned in March 1861, and the loss adjusted with the insurance company at $4200, which the plaintiffs received and appropriated to their $14,000 judgment. On the 6th of October 1861, Buckley's factory property was sold by the sheriff under a lien prior to the Farnum mortgage ; the plaintiffs received nothing from that sale. In April 1862, shortly after Mrs. Buckley's mortgage was due, it was placed in the hands of P. Frazer Smith for collection. Mr. Smith wrote to Mrs. Buckley for payment. She replied, " I will try

[Buckley *v.* Garrett.]

to get the money in a few days." Mr. Smith wrote to her again, and Mr. Buckley afterwards called on him with his attorney. Buckley said he had called in consequence of the letter to his wife, and that he wanted time. Mr. Smith told Buckley and his attorney that the plaintiffs did not wish to press the collection if they could get the money without. Buckley said they must try to do it, but he did not know where to raise the money.

The defendants asked the court to charge the jury—

"1. The debtor to the plaintiffs was James Buckley. The $1000 mortgage of his wife, now sought to be collected in this suit, was only a collateral security.

"2. When Mrs. Buckley executed the $1000 mortgage to the plaintiffs, on the 28th day of March 1860, she became thereby, on that day, a creditor of her husband to that extent.

"3. When James Buckley, on the 31st day of March 1860, assigned the policy of insurance to the plaintiffs as collateral security, it was as collateral to his bond of $1000, given three days before to the plaintiffs and to secure his wife, who had become his creditor.

"4. So much of that policy as was necessary to pay the said $1000 bond of James Buckley to the plaintiffs, with its interest, must be used for that purpose.

"5. The defendants upon the facts are entitled to the verdict in this case."

The court answered:—

"The 1st and 2d points are affirmed; the 3d is not. The assignment, judged by its face alone, we would hold to be collateral security for all Mr. Buckley's indebtedness to Garrett & Martin, for its terms are general. But whether the circumstances surrounding the transaction and other evidence in the cause show it to have been intended 'as collateral security for *his bond* given three days before, *and to secure his wife,* who had become his creditor,' is a question for the jury. It is true, the eminent judge who delivered the opinion of the Supreme Court, when this case was before it, used the language embraced in this point. He did not, however, intend it to be regarded as a legal proposition, but simply as his judgment of what the facts tended to prove, for immediately following we find this language: 'And if it had been thus *submitted to the jury* their verdict must have been for the defendant.' We did not before submit it, because we then regarded the question as controlled by the assignment itself, which as we have seen is in writing, and did not see any other evidence in the cause bearing upon it. We shall now submit the question to the jury as the Supreme Court has decided we should have done before, but, of course, without any suggestion of opinion how it should be decided. The jury must be guided in this respect by its own judgment uninfluenced by the court.

[Buckley *v.* Garrett.]

" The 4th point is disaffirmed. The Supreme Court passed upon no question in this case but the one referred to in the preceding point.

" After using the language already quoted the opinion proceeds : ' Upon this point the court was in error. And as this rules the case it is unnecessary to consider the errors assigned more particularly.' Our own views heretofore expressed of the question presented by this point have undergone no change. But in the different aspect in which the question now comes before the court, it seems to us that all difficulty in relation to it is removed. For if the jury finds that the assignment was *not* made with a view to secure the debt for which Mrs. Buckley is liable and for *her* protection, but as security to Garrett & Martin generally, with a view alone to their protection, they must be permitted to apply the money received for such part of their debt as *needed protection*, or manifest injustice will be done. We would defeat the very object of the transfer by requiring them to do otherwise.

" The debt covered by [Mr.' Buckley's mortgage was *amply secured*. About this no question was made, and none can be made. The evidence shows her property to be worth at least three times the amount of the mortgage. To require the money, therefore, to be applied to this debt, would simply be to take away from the assignees all benefit of the assignment to this extent.

" The circumstance that Mrs. Buckley occupied the position of surety cannot possibly make any difference, if the question referred to is found against her. It would be difficult to understand the equity that would permit one person to take a security made for the benefit of another—a security which the other must be presumed to have *sought for and obtained*—for under such circumstances Mr. Buckley could not possibly have a motive to make, and tender it voluntarily.

" Of course, if the question referred to is found in favor of Mrs. Buckley, the rights of the parties are otherwise—are reversed. For in that case, the security is *hers* to the extent of her mortgage, and Garrett & Martin cannot be permitted to deprive her of it. Thus, it appears to us, that the question about to be submitted to the jury (involving the purpose and intention of the assignment), is really the only one in the cause. As it is found, so must the case be decided."

The judge, after recapitulating the acts, further charged :—

" The question presented by these facts is—should the money received on the policy from the insurance company have been applied to the debt of $1000 before referred to, or as the plaintiffs, Garrett & Martin, have applied it ? If it should have been applied to the former—the $1000—the debt on account of which the mortgage in suit was given, is paid, and there can be no recovery

[Buckley *v.* Garrett.]

here. And whether the money should have been so applied, depends upon the design of the parties in transferring the policy. [If it was transferred by Mr. Buckley, *especially* to secure the debt of $1000, with a view to protect his wife against loss as his surety, then the money received from the company should have been applied to this debt.

"We repeat, if any such design entered into the transaction, the money must be so applied as to carry it out. But if, on the other hand, the assignment was made as security for Buckley's indebtedness to Garrett and Martin generally, with a view alone to *their* protection, then it was their right to apply the money received as they did—to the debt they esteemed least secured.

"*Then you will say* whether the assignment of the policy was made by Mr. Buckley on account especially of the debt of $1000 referred to, with a view to the protection of his wife, or whether it was without any such view, but on account of indebtedness generally to Garrett & Martin, and for their protection alone.]

"The facts and circumstances bearing on this question have been referred to and commented upon very fully by the counsel. You will bear in mind the language of the transfer which has been read to you, the time and circumstances under which it was made, and other evidence that may tend to shed light on the question. If you find it was made on account of the debt of $1000, with a view to protect Mrs. Buckley—that such a design was in the mind of Mr. Buckley at the time—then we repeat, the money received must be applied to this debt, and the mortgage in suit be treated as satisfied. If, on the other hand, you find that no such purpose entered into the transaction, but that the assignment was made as security to Garrett & Martin, with a view to their protection alone, then it was their right to apply the money as they did; and this would leave the debt, on account of which the mortgage was executed unpaid, and in such case the plaintiffs will be entitled to recover."

There was a verdict for the plaintiffs for $1487.50.

The defendants took a writ of error, and assigned for error the answers of the court to their 3d, 4th and 5th points, and that portion of the charge enclosed in brackets.

*J. M. Arundel* and *J. H. Brinton*, for plaintiffs in error.— The policy as a conclusion of law was collateral security for the $1000 bond: Buckley *v.* Garrett, 11 Wright 280. A surety is entitled to the benefit of all the securities given by the principal: Kinley *v.* Hill, 4 W. & S. 426; Cornwell's Appeal, 7 Id. 305; Yard *v.* Patton, 1 Harris 287; Elkinton *v.* Newman, 8 Id. 281. And has a clear right to control the appropriations of a payment made by the principal debtor: Harker *v.* Conrad, 12 S. & R. 305; Myers *v.* United States, 1 McLean 493.

10 P. F. SMITH—22

*P. F. Smith* and *W. Darlington* (with whom was *G. F. Smith*), for defendants in error.—The right of appropriation belonged to the creditor, to be exercised by the performance of some act which indicated an intention to appropriate: Harker *v.* Conrad, 12 S. & R. 305. If the debtor desire to have the proceeds of a chose in action assigned as collateral security placed to a particular account, it is his business to say so at or before the time when the money is received. Actual application at the proper time gives a legal right, and the equity of a surety shall not disturb it: Logan *v.* Mason, 6 W. & S. 14, 15.

The opinion of the court was delivered, January 25th 1869, by
SHARSWOOD, J.—If a debtor at or immediately after the execution or the assignment of a mortgage on his property to a creditor transfers to him a policy of insurance against fire on the mortgaged premises, though nothing be expressed at the time, or it be transferred as collateral security generally, it is a conclusion of law, from the very nature of the transaction, that the policy is to be held by the creditor as a collateral security for the mortgage. It would require evidence of an express agreement or understanding to authorize the assignee to apply the amount of the insurance received in the event of a loss to any other debt or liability. The policy being on the mortgaged premises was to make good the value of the property to the holder of the mortgage, if the buildings or improvements should be destroyed by fire. The transaction speaks for itself as loudly as any words could make it. So this court decided when the case was here before: Buckley *v.* Garrett, 11 Wright 280. "The bond of Buckley," says Mr. Justice Read, "was given to Garrett & Martin on the 28th of March, accompanied by his wife's mortgage as a collateral security for an undivided third part of a mortgage to be assigned to them. By his bond Buckley became a debtor to Garrett & Martin, and also on the same day made his wife his creditor. When, therefore, on the 31st of March, he assigned this policy as collateral security, it was as collateral to his own bond given three days before, and to secure his wife who had become his creditor; and if it had been thus submitted to the jury their verdict must have been for the defendants;" that is, if the case had been submitted to the jury with this instruction from the court their verdict must have been for the defendants. Any other verdict would have been against the charge as to the law, and could not have been permitted to stand.

The learned judge below, therefore, misapprehended the former decision in the case when he supposed that the question was one of fact to be left as such to the jury. It arose wholly upon the construction of writings, as he had properly apprehended it to do upon the first trial before him, and was therefore wholly in the

[Buckley v. Garrett.]

province of the court. Instead of instructing the jury that the assignment of the policy to the assignee of the mortgage was a collateral security for that mortgage alone, in the event of loss by fire to the mortgaged premises, and which of course enured to the benefit of the assignor's own bond and his wife's mortgage also given as collateral for the same debt—he said in his charge: "If it was transferred by Mr. Buckley *especially* to secure the debt of $1000, with a view to protect his wife against loss as his surety, then the money received from the company should have been applied to this debt." If this had been a correct statement of the law he ought to have added that as there was no evidence in the case that it was in fact so specially assigned, their verdict must be for the plaintiffs. It is evident if the law has been correctly held by this court that the case called for a binding direction to the jury in favor of the defendants.

Nor do we think that the letter of Mrs. Buckley to Mr. P. F. Smith, or the conversation with Mr. Buckley detailed by that gentleman, had any tendency to show that there was an agreement in regard to the assignment different from what the law implied. Had the defence now set up been that Mr. or Mrs. Buckley had paid the money, this request for time when called on to pay the mortgage, would have been cogent evidence to throw discredit on such a defence. But when the question was, what appropriation the law would make of the proceeds of collaterals collected by the creditor, the evidence only showed that they were ignorant of their legal rights, and could not be tortured into an admission that they had made any special agreement on the subject when the policy was assigned.

Judgment reversed, and *venire faĉias de novo* awarded.