## DeHaven's Estate.

*Assignment—Insurable policy—Assignment to secure debt—Future indebtedness—Collateral security.*

1. An assignment as collateral security should be strictly construed.

2. An assignment of a policy of insurance "as collateral security for indebtedness" covers only a present indebtedness existing at the time of the assignment and not indebtedness to be created in the future.

3. Where an insured assigns endowment policies on his life "as collateral security," and the indebtedness in existence at the date of the assignment is subsequently paid, the fact that the assignee continued to hold the policies until they became due and were paid, is not proof that the assignment was intended to cover indebtedness created after the date thereof. The assignee had a right to retain the policies until the premiums advanced by him had been paid.

Argued March 26, 1912. Appeal No. 341, Jan. T., 1912, by Thomas Batley, from decree of O. C. Phila. Co., sustaining exceptions to adjudication in Estate of Holstein DeHaven, deceased. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Exceptions to adjudication.

From the record it appeared that on April 10, 1896, Thomas Batley assigned two endowment policies of insurance to the Provident Life and Trust Company, to Holstein DeHaven. The assignments were practically identical and the material portion of one of them was as follows:

For value received, I hereby transfer, assign and set over unto Holstein DeHaven and his assigns, all my right, title and interest in policy of insurance issued by The Provident Life and Trust Company of Philadelphia, No. 28,992, dated October 23, 1886, and all advantages to be derived therefrom as a collateral security for indebtedness.

The other material facts in the case appear by the opinion of the Supreme Court.

*Error assigned* was in sustaining exceptions to adjudication.

*Samuel W. Pennypacker,* with him *J. Whitaker Thompson,* for appellant.—The assignments of the insurance policies being "as collateral security for indebtedness" cover only a present indebtedness existing at the time of the assignment and not indebtedness to be created in the future: Munn v. McDonald, 10 Watts 270; Seanor v. McLaughlin, 165 Pa. 150; Brown v. James, 114 N. W. Repr. 591; Clement v. Houck, 113 Iowa 504 (85 N. W. Repr. 765); Penna. Co. for Ins. on Lives & Granting Annuities App., 18 W. N. C. 469; Robinson v. Frost, 14 Barb. (N. Y.) 536; Shroder v. Hatz, 47 Pa. 528; Selden v. Nat. Bank, 69 Pa. 424; Price v. Fire Ins. Co., 13 W. N. C. 312; Smuller v. Union Canal Co., 37 Pa. 68; Bank of U. S. v. Maclester, 9 Pa. 475; Beyer v. Fenstermacher, 2 Whart. 95; Peterson v. Height, 3 Whart. 150.

There is no evidence in the case to justify an inference that the purpose of the assignments was to protect future indebtedness, nor sufficient evidence that such indebtedness remained unpaid.

*J. Claude Bedford,* with him *William N. Trinkle, Charles H. Downing* and *John C. Bell,* for appellees.— The assignment covered future indebtedness: Merchants' Nat. Bank v. Hall, 83 N. Y. 338; Simons v. First Nat. Bank, 93 N. Y. 269; Farr v. Nichols, 132 N. Y. 327 (30 N. E. Repr. 834).

OPINION BY MR. JUSTICE MESTREZAT, April 15, 1912: The single question raised by this appeal is whether the word "indebtedness" in the assignments of the two life insurance policies means an indebtedness existing

at the time of the assignment, or also includes any future indebtedness that might be contracted and become due from Batley to DeHaven. The learned auditing judge held that the assignment was intended to and did secure only a present existing indebtedness. The court in banc reversed the auditing judge, and held that the assignment is broad enough to include any present and future indebtedness.

Batley assigned to DeHaven the two life policies, each for five thousand dollars, "as a collateral security for indebtedness." Whatever may have been the intention of the parties, the language of the assignment standing alone includes only an indebtedness existing at the date of the transfer of the policies. Instead of making the transfer "as a collateral security for indebtedness," if the parties intended it to cover future advances, as claimed by appellee, they could, and we think would, have said "collateral security for any future indebtedness." An assignment as collateral should be strictly construed, and, as thus interpreted, the language of the assignment in question does not disclose an intention to secure future advances.

The circumstances and facts surrounding the transaction confirm the view that the policies were intended to secure an indebtedness existing at the time of the assignment. Batley was engaged for several years in extensive building operations, and DeHaven was a conveyancer, manager of estates, and real estate broker. They had dealings growing out of Batley's business as a builder. DeHaven advanced money and negotiated mortgages upon houses built by Batley. He stated an account running from May 24, 1891, to December 12, 1892, which shows receipts of money by him and payments of money made to Batley. These all grew out of Batley's building operations. The balance shown by the account, seventy-five hundred dollars, was secured by mortgage. Batley retired from the building business in 1892. So far as appears, therefore, there was no oc-

casion for the continuance of the same business rela-
tions between the two men. Batley gave DeHaven a
second mortgage on the same premises in August, 1895,
for three thousand dollars. The assignment of the poli-
cies was made on April 10, 1896. In the meantime, pay-
ments had been made on the mortgages leaving, at the
date of the assignment, a balance due of eight thousand
dollars. It is conceded that this indebtedness was exist-
ing at the time of the assignment. There is no evidence
in the case that would warrant the conclusion that Bat-
ley was otherwise indebted to DeHaven at that time.
The statement of June 28, 1901, does not show an in-
debtedness due DeHaven at the date of the assignment.
It is entirely insufficient for the purpose. The meaning
of the statement is not clear. It purports to be a full
settlement between the parties as to that date "as per
book account." The appellee contends that these words
show there was an indebtedness outside of the mortgage
debt, but we do not regard this as at all probable. There
was no occasion at that time for what is technically
called a "book account" between the parties. Subse-
quent to 1892, the dealings between the parties, so far
as the evidence discloses, did not require a book account.
Batley was no longer in the building business, and the
only business he had with DeHaven was a few small
loans which certainly would not be the subject of a
book account, but would be evidenced in another and
proper way. Aside from this, however, in view of De-
Haven's letter of December 23, 1892, the account is
probably a statement of the balance due on the mortgage
indebtedness. Payments were made at different times
on the first mortgage before it was satisfied, and De-
Haven may have entered on his books the amounts and
dates of the payments. At all events, there is nothing
whatever to show that any part of the amount included
in the sum due January 1, 1898, was an existing indebt-
edness or even an indebtedness contemplated on April
10, 1896. when the insurance policies were assigned.

So far as the evidence discloses, the mortgage debt was the only "indebtedness" due from Batley to DeHaven at the date of the assignment, and there is nothing that leads to the conclusion that the assignment was not to secure that indebtedness, and in the absence of the existence of any other debt due by Batley to DeHaven at the time, it must be assumed that was the debt the collateral was intended to secure.

The facts suggested in the argument of the appellee as showing that the mortgage debt was not the indebtedness intended to be secured by the insurance policies do not sustain the position. It is true that DeHaven retained the policies after the two mortgages were satisfied in 1902. It appears that Batley paid the premiums on the policies up till the date of the assignment, and thereafter they were paid by DeHaven. The latter, therefore, had the right to retain the policies until these premiums were repaid him which was not done until they were paid out of the proceeds of the policies collected by his executors. The fact that Batley did not have the policies reassigned to him does not conclude him as to his right to their proceeds, as it may well be that he was unable to raise the money to pay the premiums. He could not and did not object to the payment of one of the policies to the executors as it required the amount to repay the premiums. That the mortgage indebtedness was of some years' standing is not sufficient to show that it was not intended to be secured by the assignment of the policies. The creditor had the right to take as many securities for the indebtedness as he could obtain from the debtor. His purpose in doing so is immaterial. The claimant having shown that the mortgage indebtedness existed at the date of the assignment the burden was shifted to the executors to show any other indebtedness due from Batley secured by the assignment. This burden was not met by the statement of June 28, 1901.

We are of the opinion that the language of the as-

signment and the circumstances and facts disclosed by
the evidence show that the collateral was intended to
secure only an indebtedness existing at the date of the
assignment, that the mortgage debt was the only indebt-
edness existing at that time, and that the assignments
were not made to protect a future or subsequent indebt-
edness.

The decree of the court below is reversed, and it is
ordered that the appellant receive the amount of the
policies less the premiums paid by DeHaven thereon di-
minished by the dividends received by him.