## In re Merion Title and Trust Company. No. 3

*Desmond J. McTighe*, for Secretary of Banking.
*Frederick B. Smillie*, for exceptant.

KNIGHT, J., May 26, 1933.—The parties have filed a stipulation of the facts, from which it appears that at the time of the closing of The Merion Title and Trust Company it was indebted to the exceptant in the sum of $1,203,491.65. This indebtedness was evidenced by collateral notes, one of which, for $150,000, is still in the possession of exceptant, although, as of March 1, 1933, the indebtedness of the Merion to exceptant had been reduced to $31,256.97. As of the last-mentioned date, The Pennsylvania Company still held collateral belonging to the Merion, of the approximate value of $1,106,493.96. The Secretary of Banking is ready and able to pay to The Pennsylvania Company the balance due to it, provided the company will turn back to the Merion the collateral which it holds. The Pennsylvania Company refuses to return the collateral, claiming the right to hold the same as collateral security for the payment of principal and interest of certain mortgages, payment of which, it is alleged, was guaranteed by the Merion, and which mortgages, with the exception hereinafter noted, are held by The Pennsylvania Company in a fiduciary capacity.

The collateral notes given by the Merion were not in the usual negotiable form and contained the provision that the collateral was "deposited as collateral security for the payment of this liability and also for the payment of any other liability or liabilities to the holder hereof, due or to become due, or which may be hereafter contracted."

All the mortgages described in the stipulation, with one exception, were guaranteed by the Merion under a formal written contract, by which the now insolvent bank undertook to guarantee the payment of interest on the mort-

gages within 5 days of the time of payment thereof, and payment of the principal or any instalment thereof when collected, but in any event within 18 months after the same should become due.

For our present purpose, we will also consider that there has been a default in all the mortgages and that the principal is now due and payable.

Counsel for the exceptant contend that, under the broad terms of the collateral note, the exceptant has the right to hold the collateral security deposited with it, to secure any losses that it may suffer in a fiduciary capacity by reason of the mortgages described in the stipulation.

To fully understand the situation, it should be noted that The Pennsylvania Company, the exceptant, does an extensive banking and trust business. In its capacity of a bank of deposit, it made large loans to the Merion, evidenced by notes, as above set forth, and secured by the deposit of collateral. The mortgages here in question, with the exception hereinafter noted, were held by the exceptant as trustee for sundry trusts, and the guarantee of the Merion was to the exceptant as such trustee.

Counsel for the exceptant base their contention by inference and analogy upon the law of set-off. In effect, they treat the demand of the Secretary of Banking for the return of the collateral security as a claim by Merion against The Pennsylvania Company, against which they assert the right to set off present or future losses sustained by the trusts holding the guarantees of Merion.

As authority for this position, counsel rely upon two early Pennsylvania cases, Wolf v. Beales, 6 S. & R. 242 (1820), and Solliday v. Bissey, 12 Pa. 347 (1849). The former case was decided on the ground that the bond sought to be used as a set-off was not assignable, and therefore was not available in the hands of the assignee as a set-off. In the opinion, however, it is said: "and it may be stated as a general rule, that the person having *the right of action*, may set-off a debt due to him as a trustee, against a debt due by him in his own right." In the latter case, an individual sought to set off, with the consent of his coexecutor, an account due the executors against a claim against one of them in his individual capacity. The Supreme Court, citing Wolf v. Beales, supra, held that this could be done.

In 1916, the question came again into the appellate courts. In Hunter v. Henning, 64 Pa. Superior Ct. 366, the defendant, sued in his own right by the receiver of an insolvent bank on a note due the bank, sought to set off deposit accounts standing in his name in the bank, one as trustee for J. Dorothy Henning, and the other as executor of E. O. Anderson. The court, reversing the lower tribunal, allowed the set-off, relying in part on Wolf v. Beales and Solliday v. Bissey. The case was appealed to the Supreme Court, 259 Pa. 347, where the judgment of the Superior Court was reversed in a well-considered opinion by Justice Stewart, who discusses and answers the arguments now made by the exceptant and explains Wolf v. Beales and Solliday v. Bissey. The Supreme Court rests its decision on the absence of mutuality, which the law requires in cases of set-off, and on the ground that to permit the cross-demand would enable a debtor to pay a debt of his own with the money of other people.

In the latest reported case on the subject, Gordon, Secretary of Banking, v. Union Trust Co., 308 Pa. 493, Hunter v. Henning is followed and emphasized.

It is argued by counsel for the exceptant that the rule announced in the last two cases should be confined to bank deposits, but we can see nothing in the opinions that would warrant such a conclusion. On the contrary, we are of the opinion that in the present complex organization of business, with its multitude of intertwining relationships, the ancient rule of cross-demand and set-off was

in danger of being extended to the point where it might well become an instrument of injustice and unfair preference, and the Supreme Court, in Hunter v. Henning, and Gordon v. Union Trust Company, announced a more equitable and logical doctrine.

We therefore hold that the exceptant may not set off any claim it may have against Merion in a representative capacity, against a demand that Merion had against the exceptant in its ordinary capacity. If we eliminate the rule of set-off, the question then becomes one of the intention of the parties, as revealed by the language of the collateral note.

It is well established that a pledge agreement must be strictly construed and enforced, in accordance with its terms: 49 C. J. 936, sec. 77; DeHaven's Estate, 236 Pa. 146. Here the collateral notes were prepared by the pledgee, and in seeking the intention of the parties the language used must be construed in favor of the pledgor and strictly against the pledgee.

When we remember that the exceptant was in both the banking and trust business, it does not seem probable that the parties in a strictly banking transaction had in mind the protection of securities held by the exceptant in its fiduciary capacity. If such were the case, it would have been the easy and natural thing to have so stated in the pledge agreement.

Especially is this true in view of the fact that the agreement is not in the form of the ordinary negotiable note used by banks, but is a special contract prepared and printed by the exceptant.

The agreement provides that the collateral was for the "payment of this liability, and also as collateral for the payment of any other liability or liabilities to the holder thereof, due or to become due or which may be hereafter contracted." It will be noted that this secures the "holder" of the instrument, and many rights and privileges in respect to the collateral are given by the writing to the "holder" thereof. The "holder" is The Pennsylvania Company in its individual capacity, and not The Pennsylvania Company in its capacity of trustee for sundry trusts. It would be distorting the language used to hold that it shows an intendment to cover the liability of Merion to trust estates of which the exceptant was trustee.

We are therefore of the opinion that the exceptant cannot hold the collateral security, because of any present or future liability of Merion on the mortgage guaranties held by the exceptant in a fiduciary capacity.

This disposes of the mortgage guaranties described in the third, fourth and fifth paragraphs of the stipulation of facts, as all of these mortgages are held by the exceptant as trustee for sundry trusts.

In the sixth paragraph of the stipulation, it is set forth that on March 15, 1927, one John J. Dougherty made and executed a bond and mortgage to The Pennsylvania Company, trustee for sundry trusts, in the sum of $100,000, due at the expiration of 3 years. When the principal of said mortgage became due, payment was demanded. The Merion held a second mortgage on the premises covered, and on May 8, 1930, wrote The Pennsylvania Company, that if the latter would extend the loan the Merion would guarantee the payment of principal and interest. In part the letter reads:

"As we have instituted proceedings for the sale of the property by reason of default under the provisions of our mortgage we did not wish to be in a position of requesting you to extend this loan for Mr. Dougherty, but we directed our attorneys, Messrs. Williams and Sinkler, to advise you that in consideration of your extending this loan The Merion Title and Trust Company of Ardmore will guarantee the payment of principal and interest, the guaranty to be in form satisfactory to you.

"Unless the matter is contested there should be a sale under our mortgage toward the close of the present month, and we should appreciate it if you will continue to carry your mortgage loan in its present form until that time, when we will put the matter on a permanent basis satisfactory to you. In the meantime we wish to advise you as a matter of record that The Merion Title and Trust Company of Ardmore does hereby guarantee payment of principal and interest under the terms of your mortgage."

Apparently nothing further was done. The Pennsylvania Company still holds the mortgage, the principal of which is due, with interest thereon from November 15, 1931.

The Pennsylvania Company, in its ordinary corporate capacity, is the owner of a beneficial interest of $3,000 in this mortgage; the balance, $97,000, it holds in a fiduciary capacity.

We are of the opinion that the letter of May 8, 1930, above quoted, was a valid and enforceable guaranty of the payment of principal and interest of the Dougherty mortgage, by Merion.

That portion of the mortgage held by The Pennsylvania Company in its fiduciary capacity comes within the purview of the ruling we have made as to the other mortgages described in the sitpulation, which leaves for consideration the interest held by The Pennsylvania Company in its ordinary corporate capacity, amounting to $3,000.

Counsel for the Secretary of Banking contends that the liability of Merion under all of the mortgage guaranties was contingent, and that no liability existed until losses were established. This argument entirely overlooks the Act of July 24, 1913, P. L. 971, which provides:

"That every written agreement hereafter made by one person to answer for the default of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: 'This is not intended to be a contract of suretyship,' or unless each portion of such agreement intended to modify the rights and liabilities of suretyship shall contain in substance the words: 'This portion of the agreement is not intended to impose the liability of suretyship.'"

There is nothing in any of the mortgage guaranties which would indicate that they were not intended to be contracts of suretyship; quite the contrary appears. The obligation of Merion on the agreements were direct and primary, and could be enforced by The Pennsylvania Company as trustee without recourse first had to the bonds and mortgages guaranteed. The situation then becomes one in which the Merion at the time of its closing, was directly obligated to The Pennsylvania Company, in its ordinary corporate capacity, to the amount of $3,000. This direct obligation falls within the scope of the agreement contained in the pledge, and to this extent we are of the opinion that The Pennsylvania Company may hold the collateral pledged, or so much thereof as may be reasonably necessary.

We have not discussed all the exceptions filed by The Pennsylvania Company, but have confined ourselves to the questions propounded in the stipulation of facts, which, as we understand counsel, will dispose of all the exceptions.

And now, May 26, 1933, the third exception is sustained, to the extent that the account fails to show that The Pennsylvania Company holds collateral for the sum of $3,000, representing the direct obligation of Merion to The Pennsylvania Company, on the guaranty of the Dougherty mortgage. All other exceptions or portions thereof are dismissed.

From Aaron S. Swartz, Jr., Norristown, Pa.