Potter Title & Trust Company *v.* Berkshire Life
Insurance Company (Casper, Appellant).

Argued April 21, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, and RENO, JJ. (KENWORTHEY and JAMES, JJ., absent).

*Harry M. Jones,* for appellant.

*Howard Zacharias,* with him *Peter Cooper,* for appellee.

OPINION BY HIRT, J., September 27, 1944:

On September 24, 1926, Frank C. Rugh borrowed $2,625 from Potter Title & Trust Company (herein referred to as the Trust Company) on his promissory note. Collateral to the note and as security for its payment, he delivered an insurance policy on his life issued by Berkshire Life Insurance Company assigned to the Trust Company, with the consent of the insurer, "as the interest of Potter Title & Trust Company may appear." After the assignment and subject to it, Nancy Elizabeth Casper, appellant, was named beneficiary of the policy. Rugh's personal indebtedness created by the above note continued "in various amounts by renewals, over a period of many years up to and including May, 1941."

The controversy in this appeal relates to Rugh's lia-

bility as endorser on another note and whether the assigned life insurance policy was security for its satisfaction. On September 19, 1934, Davis Bros. Pharmacists, Inc., borrowed $2,725 and gave its note in that amount to the Trust Company payable 30 days from date, with Rugh as an endorser. Before the due date of the note the corporation became insolvent and receivers were appointed to wind up the business and convert its assets. The note was not paid when due and was duly protested. The Trust Company proved its claim against the insolvent and received in all $983.72 from the receiver to apply on the note on distribution of the corporation's assets—the final payment on January 13, 1936. But it took no other action to collect interest or principal unpaid on this note until after Rugh's death on June 30, 1941. On November 6, 1941, this action in assumpsit was brought on the assignment of the policy, against Berkshire Life Insurance Company to satisfy Rugh's obligation as endorser on the corporation note as well as his liability on his personal note. The insurer paid $3,874.68, the proceeds of the policy, into court. Appellant was allowed to interplead. With her consent Rugh's personal note, as to which there was no dispute, was paid out of the fund leaving a balance of $1,148.34, the amount in controversy here. On the trial in the lower court without a jury the trial judge concluded that the assignment was intended to secure all of Rugh's indebtedness existing at the time when the policy became payable. Judgment was entered in favor of the Trust Company for $1,148.34 to apply on Rugh's liability as endorser of the corporation note.

If the assigned policy was a pledge for the discharge of Rugh's liability as endorser on this note the Trust Company is not barred by the statute of limitations by failure to proceed on the pledge for more than six years. A pledgee may collect the amount of his debt out of

his security and the debtor may not demand a return "of the collaterals until the debt has been paid, notwithstanding the statute may have run upon his creditor's right of action against him. ...... The holder of a note with whom collaterals have been deposited has, while the statute is running, two remedies. One against the maker by suit, the other against the collaterals. If he loses the first by the lapse of time, he still has the second." *Hartranft's Estate*, 153 Pa. 530, 26 A. 104; *Sproul v. Standard Glass Co.*, 201 Pa. 103, 50 A. 1003; *Batten v. Jurist et ux.*, 306 Pa. 64, 158 A. 557.

In our view however there are two grounds, upon each one of which the judgment in this case must be reversed.

Assuming that the pledge as given was intended to secure the bank on Rugh's future contingent liability as endorser, the Trust Company is barred by its failure to comply with §34 of the Insolvency Act of June 4, 1901, P. L. 404, 39 PS 101. It was not obliged to prove its claim against the insolvent. §33, 39 PS 100. Cf. *In re M'Elwain*, 296 Fed. 112. But since the Trust Company did prove the note and accepted its share of the dividends on distribution of the assets, the maker of the note primarily liable for the debt, was discharged. Section 34 under these circumstances provides in effect that the endorser also shall be discharged from liability unless "written notice" is given the endorser giving him the "opportunity to purchase the claim and subrogate himself to the rights of such creditor". It is unimportant that Rugh was one of the receivers and had all the knowledge regarding the claim that written notice would have given him. It was for the Trust Company to decide whether it would continue his liability as endorser after discharge of the primary debtor. This could be accomplished only by compliance with §34 of the act. That provision is mandatory. Cf. *Pa. Co. v. Forrest Hill B. & L. A.*, 125 Pa. Superior Ct. 465, 190 A. 556; *Germantown Tr. Co. v. B. & L. Assn.*, 125

Pa. Superior Ct. 477, 190 A. 561. Where notice in a specified manner is prescribed by statute, that method is exclusive. 39 Am. Jur., Notice, §9.

For want of written notice in accordance with the act Rugh's liability as endorser terminated and with it every right of the Trust Company to look to collateral deposited by him to secure his obligation. 49 C. J., Pledges, §177.

The Trust Company is barred on ground more fundamental; the pledge, although the language of the assignment was prospective, was never intended as security for anything other than Rugh's obligation on his personal note created at the time the collateral was delivered to the Trust Company and renewals of the loan until paid. The intention of the parties is controlling. Collateral does not secure a contingent liability unless the intention to have such obligation secured is clearly indicated. Annotation, 43 A. L. R. 1069. And in this State it requires evidence of an express understanding to authorize the assignee of collateral to look to the pledged property for any debt or liability other than that created at the time when the pledge was made. *Buckley et al. v. Garrett et al.,* 60 Pa. 333. Rugh's only obligation to the bank when the policy was assigned was his personal note. It was this obligation that was continued by renewals, and ultimately paid out of the proceeds of the assigned policy. While the Trust Company looked to Rugh for the payment of interest on this note during his lifetime, no demand was ever made on him for either the principal or interest on the note which he endorsed, after the insolvency of the maker in 1934. In the absence of evidence (all the circumstances are to the contrary) that it was intended that the pledge should be applicable to future contingent liability, the security must be regarded as limited to Rugh's personal indebtedness created at the time of the assign-

6

ment. Cf. *DeHaven's Estate*, 236 Pa. 146, 84 A. 676.[1]

Judgment reversed and directed to be entered in favor of Nancy Elizabeth Casper, appellant.

---

[1] In the *Buckley* case, (60 Pa. 333) a fire insurance policy was assigned "as a collateral security" generally. It was held; "If a debtor at or immediately after the execution or the assignment of a mortgage on his property to a creditor transfers to him a policy of insurance against fire on the mortgaged premises, *though nothing be expressed at the time, or it be transferred as collateral security generally,* it is a conclusion of law, from the very nature of the transaction, that the policy is to be held by the creditor as a collateral security for the mortgage. It would require evidence of an express agreement or understanding to authorize the assignee to apply the amount of the insurance received in the event of a loss to any other debt or liability. The policy being on the mortgaged premises was to make good the value of the property to the holder of the mortgage, if the buildings or improvements should be destroyed by fire. *The transaction speaks for itself as loudly as any words could make it."* (Italics added.)

In *DeHaven's Estate*, (236 Pa. 146) two life insurance policies were assigned "as collateral security for indebtedness." Held: "Whatever may have been the intention of the parties, the language of the assignment standing alone includes only an indebtedness existing at the date of the transfer of the policies. Instead of making the transfer 'as a collateral security for indebtedness,' if the parties intended it to cover future advances, as claimed by appellee, they could, and we think would, have said 'collateral security for any future indebtedness.' An assignment as collateral should be strictly construed, and, as thus interpreted, the language of the assignment in question does not disclose an intention to secure future advances."