419 A.2d 21

**MALVERN COURTS, INC.**

v.

**Robert STEPHENS and Doris Stephens, his wife, Appellants.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed Jan. 18, 1980.

Reargument Denied May 13, 1980.

Dante W. Renzulli, Jr., West Chester, for appellants.

Ronald C. Nagle, West Chester, for appellee.

Before PRICE, DOWLING and GATES, JJ.*

GATES, Judge:

On June 1, 1977, appellee Malvern Courts, Inc., filed a complaint in assumpsit for possession of real property in order to evict appellants Doris and Robert Stephens, residents of appellee's mobile home park. The judge sitting without a jury entered judgment in favor of appellee and the appellants appealed to this court. For the reasons stated herein, we reverse the judgment entered by the court below.

Two questions of first impression are presented to us for decision. Appellants contend that no eviction proceeding may be commenced because appellee did not notify them of the violations of the mobile home park rules by certified and registered mail as required by the Mobile Home Park Rights Act[1]; and, secondly, even assuming proper notice, the evidence presented showed that the rules they are accused of violating are not enforced with respect to other mobile home residents.

At trial, Joan and Roger Buettner the owners and operators of Malvern Courts, Inc., testified that the parties entered into a month–to–month oral lease agreement on June 1, 1971. On many occasions from approximately June 2, 1976 to the commencement of this action, the Buettners notified appellants orally and by letters of various violations of the park rules.

On July 2, 1976, the Buettners sent a notice by regular mail to appellants giving them thirty (30) days, ". . . in which time to clean up your lot to our satisfaction . .." On January 21, 1977, the Buettners sent a letter by regular mail and enclosed a copy of the park rules with the specific violations underlined. On February 23, 1977, the Buettners

---

* President Judge G. THOMAS GATES of the Court of Common Pleas of Lebanon County, Pennsylvania, and Judge JOHN C. DOWLING of the Court of Common Pleas of Dauphin County, Pennsylvania, are sitting by designation.

1. Act of November 24, 1976, P.L. 1176, No. 261, § 1, 68 P.S. 398.1 et seq. (Supp. 1979–80).

mailed a third letter to appellants by regular mail, referring to the letter dated January 21, 1977, which advised appellants they could not park their truck in the park and giving them notice to vacate in sixty (60) days. On March 25, 1977, the Buettners sent a certified letter which stated in part:

"In accordance with our February 23, 1977 letter to you, please be advised that you will be expected to vacate the lot at D–18 Malvern Courts by April 30, 1977."

The final notice dated May 1, 1977 and sent by regular mail granted appellants an extension of thirty (30) days to remove their trailer from the lot.

Under the provisions of the Mobile Home Park Rights Act a resident may be evicted for only four reasons: (1) nonpayment of rent; (2) a second or subsequent violation of the rules of the mobile home park occurring within a six–month period; (3) if there is a change in use of the park land or parts thereof; and (4) termination of mobile home park. 68 P.S. § 398.3(a).

The manner in which notice of violations of mobile home park rules must be given in order to commence eviction proceedings is clearly set forth in 68 P.S. § 398.3(b)(2)(ii):

"(b) A mobile home resident shall only be evicted in accordance with the following procedure:

. . . . .

"(2) Prior to the commencement of any eviction proceeding, the mobile home park owner shall notify the mobile home park resident in writing of the particular breach or violation of the lease or park rules by certified or registered mail.

"(i) In the case of nonpayment of rent, the notice shall state that an eviction proceeding may be commenced if the mobile home resident does not pay the overdue rent within 20 days from the date of service if the notice is given on or after April 1 and before September 1, and 30 days if given on or after September 1 and before April 1 or an additional nonpayment of rent occurring within six months of the giving of the notice may result in immediate eviction proceedings.

"(ii) In the case of a breach of the lease or violation of the park rules, other than nonpayment of rent, the notice shall describe the particular breach or violation. No eviction action shall be commenced unless the mobile home park resident has been notified as required by this section, and upon a second or subsequent violation or breach occurring within six months, the mobile home park owner may commence eviction proceedings at any time within 60 days of the last violation or breach."

■ In analyzing these provisions consideration must be given to the purpose of the enactment, the legislative intent and the literal working of the statute.

■ The purpose of this legislation is to give special protection to mobile home owners in mobile home parks[2]. One reason for the distinction between mobile home park owners and other landlords is the hybrid type of property relationship that exists between the tenant who owns the home and the landlord who rents only the lot on which the mobile home sits. In most instances a mobile home owner in a park is required to remove the wheels and anchor the home to the ground in order to facilitate connections with electricity, water and sewerage. Thus it is only at substantial expense that a mobile home can be removed from a park with no ready place to go. The legislature, while recognizing the right of the mobile home park owner to establish and publish reasonable rules and regulations relating to tenants in the park, has sought to prevent arbitrary evictions at a substantial expense to park residents.

In its opinion, the court below stated that, ". . . The notice of February 23, 1977, specifically outlined the nature of the truck violation while the March 25th notice, sent via certified mail, made reference to the prior notice. . . . Our examination of the pleadings and the evidence and testimony adduced at trial lead us to conclude that the Plaintiff has proven by a preponderance of the evidence that Defendants did in fact receive notice of the violations and

2. Pa. Legislative Journal–House, 2078 et seq., July 15, 1979.

such was in compliance with the statutory mandates." We disagree.

"When notice in a specified manner is prescribed by a statute, that method is exclusive." 28 P.L.E. NOTICE § 4; *Point Bar Liquor License Case*, 212 Pa.Super. 164, 240 A.2d 395 (1968); *Potter Title and Trust Co. v. Berkshire Life Insurance Co.*, 156 Pa.Super. 1, 39 A.2d 268 (1944).

We allow that the apparent purpose of providing a strict notice method of eviction has several reasons. The first and obvious purpose of requiring the notice preceding eviction to set forth the reason for eviction is to determine if the reason is a valid one under the statute. Furthermore, if the notice prior to eviction is a result of nonpayment of rent, the Act provides, in paragraph (b)(2)(i), for a method whereby the resident may cure the rent default.

As applied to the instant case, the purpose of requiring a particular method of giving notice and including therein a description of the particular breaches or violations is not only to prevent disputes over whether notice was received but also to fix the six-month period within which a second or subsequent violation may result in the mobile home park owner commencing eviction proceedings. Moreover, the notice must specifically describe the violations so that a resident may correct them and commences the running of the six-month limitation period during which a further violation creates the right to bring an eviction proceeding.

The letters sent by the Buettners dated February 23, 1977, March 25, 1977 and May 1, 1977 all purported to evict appellants from their lot in the park. The letter dated January 21, 1977 describes appellants' violations of the park rules but was not mailed by certified or registered mail.

The language of the act is clear: ". . . No eviction action shall be commenced unless the mobile home park resident has been notified as required by this section, and upon a second or subsequent violation or breach occurring within six months, the mobile home park owner may commence eviction proceedings at any time within 60 days

of the last violation or breach." Because this notice serves to start the running of the statutory period during which a second violation will create a right of action in the park owner to evict the resident and thereby affect the property rights of the residents, it must be strictly complied with. Hence, absent literal compliance with the mandatory provisions of this act, no eviction proceedings may be commenced.

The earliest letter of January 21, 1977 was not certified nor was the letter of February 23, 1977. The letter of March 25, 1977 was certified but even if we were to hold that it complies with the statute by incorporating by reference the violations described in the letter of February 23, 1977, the eviction proceedings having been brought on June 1, 1977 violates subparagraph (2)(ii) in that no eviction action is allowed unless the resident had been notified as required by the section and the second and subsequent violation or breach occurred within six months.

This issue is dispositive of the case and therefore no consideration of the second issue is necessary.

Judgment reversed and complaint dismissed.