**In re SILICON ELECTRO–PHYSICS, INC. d/b/a Pensilco, Debtor.**

**In re PHOENIX MATERIALS CORPORATION, Debtor.**

**Bankruptcy Nos. 87–170E, 87–904PGH.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 5, 1990.

As Amended July 17, 1990.

Mark M. Ristau, Warren, Pa., Trustee.

Peter N. Pross, Pittsburgh, Pa., for Equibank.

William R. Bishop, Pittsburgh, Pa., for debtor.

### OPINION

WARREN W. BENTZ, Bankruptcy Judge.

*Issue*

One of the corporate debtors owned and was the beneficiary of certain life insurance policies on the life of its president, who died after conversion of the Chapter 11 cases to Chapter 7. The issue is wheth-

er Equibank's prepetition and postpetition lien on debtors' "accounts, chattel paper, contract rights, documents, inventory and proceeds," and its postpetition lien on debtors' "postpetition collateral, of any type, generated through the use and/or sale by the debtors of any of the collateral securing the indebtedness to Equibank", gave to Equibank a lien upon and right to the proceeds of the life insurance policies.

## Facts

The above corporations filed their Chapter 11 petitions on April 3, 1987. The corporations and their businesses were related and the cases were therefore consolidated for administrative purposes. On February 26, 1988, Mark M. Ristau, Esq. was appointed trustee. On May 3, 1989, the cases were transferred to Chapter 7.

Phoenix Materials Corporation ("Phoenix") was the owner and beneficiary of two life insurance policies on the life of William Santini, the president of both corporations. Mr. Santini died June 2, 1989 and the trustee collected and holds the proceeds of the policies, totalling approximately $556,000, plus accumulated interest. Most of the other assets of the corporations have been abandoned by the trustee, since Equibank has liens thereon securing its original claim of $630,372.10.[1] The final balance due Equibank, after liquidation of that collateral, remains to be ascertained. The trustee's final account, filed December 11, 1989, reflects that the insurance proceeds are substantially the only remaining asset.

Equibank had a duly perfected prepetition security interest in all of debtors' "accounts, contract paper, contract rights, documents, inventory and proceeds" thereof. Pursuant to postpetition cash collateral stipulations, Equibank was granted "a security interest in all of the postpetition collateral, of any type, generated through the use and/or sale by the debtors of any of the collateral securing the indebtedness to Equibank."

1. Included in the assets abandoned was certain real estate, but it now appears that contaminated waste material from the debtors' opera-

## Discussion

■ Equibank claims a security interest in the proceeds of the life insurance policies. Equibank argues that the life insurance contracts, being contracts, were collateral within the meaning of its 1981 security agreement and are within the meaning of the term "contract rights;" that the insurance proceeds are the result of the debtors' "contractual right" to receive payment.

In 1983 the security agreement was amended to delete the words "contract rights." Equibank points out that this was done without an intent to change the meaning; that it was done to conform to a 1982 amendment to U.C.C. § 9106, wherein "contract rights" was deleted from the definition of "account" as being unnecessary. We concur with Equibank that no change in meaning was intended by the deletion of "contract rights" from the instant security agreement. However, the context of § 9106 shows that an account is "any right to payment for goods which is not evidenced by an instrument or chattel paper." The concept of the "contract right" was the debtor's right to generate an "account" by performance—i.e., by delivery of goods; the term "contract right" became superfluous when § 9106 was simultaneously amended by adding to the definition of "account" the words "whether or not it has been earned by performance."

This review shows that the meaning of "contract rights" and "accounts" in the UCC referred to a right to payment for goods sold. Hence, such wording could not create a lien in a life insurance policy or its proceeds.

In *In re Bell Fuel Corp.*, 99 B.R. 602 (E.D.Pa.1989) the Chapter 11 debtor received insurance proceeds for business interruption damages and the District Court held that the lien of the bank on the debtor's contract rights and proceeds extended to the insurance proceeds and the bank had a lien thereon, reasoning that the collateral was the debtor's cause of action against the insurance company.

tions remained on the premises and the propriety of the purported abandonment may be subject to question.

In *Bell*, however, at the time the security interest was granted, the insured damage had already been incurred, the insurance company had declined payment, and the debtor was in the process of bringing suit under the policy to collect the damages; thus, at the time of the grant of the security interest, the insurance policy had already given rise to a chose in action against the insurance company. It was that pre-existing "chose in action" which the District Court held was collateral in which the debtor granted the bank a security interest.

By contrast, *if* Mr. Santini had died *before* the grant of the security interest to Equibank, then at the time of such grant, the insurance policy would no longer have been an insurance policy but would have become a chose in action against the insurer. That chose in action, existing at the time of the grant of the security interest, arguably could have been collateral subjected to the grant of the security interest. Such was not the situation in the case at bench.

The *Bell* court also relied on § 9306(a) of the Pennsylvania version of the Uniform Commercial Code as follows:

> "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is the proceeds except to the extent that it is payable to a person other than a party to the security agreement. Money, cash, deposit accounts and the like are "cash proceeds." All other proceeds are "non cash proceeds."

13 Pa.C.S.A. § 9306(a) (Purdon's 1984).

In *Bell*, the insurance covered injury to a property right as opposed to life insurance which is payable on death of the insured. The insurance on the debtor's property right can be likened to casualty insurance on tangible personal property which, under § 9306, is treated as the proceeds of such property for security interest purposes. It is unlike life insurance.

In *In re Guterl Special Steel Corp.*, 91 B.R. 721, 724–25 (Bankr.W.D.Pa.1988), the court held that a postpetition emergency loan of $275,000, secured by various collateral, including "general intangibles," covered the debtor's right to some $70,000 of surplus pension fund deposits, which the debtor had a right to recover, and the bank therefore had a lien thereon. But in *Guterl*, the debtor's right to a refund of the surplus existed when the postpetition lien was affixed.

Equibank also argues that part of its cash collateral was used from time to time to pay premiums on the policies postpetition and that the equities of the case demand that it be awarded the cash collected on these life insurance policies. No assertions of fact as to the precise amount of money which was paid for premiums postpetition have been offered. It is clear, however, that premiums were paid from non-collateral money prepetition and that premiums were paid as part of the business expense postpetition. Thus, Equibank's argument that to allow the unsecured creditors to share in the proceeds of the policy would constitute a "windfall," is not persuasive when measured against the trustee's argument that other creditors contributed assets to the debtor prepetition which were used to pay premiums.

The trustee and the debtor argue that Equibank never intended that it have a lien on the life insurance policies, nor did the debtor. The argument has merit because the security agreement required the debtor to carry casualty insurance on the collateral, but nowhere does it mention life insurance.

■ The intention of the parties controls whether a security interest is granted. *Potter Title and Trust Company v. Berkshire Life Insurance Company*, 39 A.2d 268, 156 Pa.Super. 1 (1944). There is nothing in the record here to support an intent to grant a security interest in the life insurance policies or their proceeds.

Further, if Equibank intended that its lien would cover any life insurance policy owned by the debtor on the life of its key employee, there were adequate lawful means at its disposal by which it could have

obtained an encumbrance thereon and it did not choose to do so.

The most important element of our inquiry, however, is the statute. 9104(7) of the Uniform Commercial Code [13 P.S. § 9104(7)] provides:

This division does not apply: ... (7) to a transfer of an interest or claim in or under any policy of insurance, except as provided with respect to proceeds (section 9306) and priorities in proceeds (section 9312).

Official Comment 7 explains further:

Rights under life insurance and other policies, and deposit accounts, are often put up as collateral. Such transactions are often quite special, do not fit easily under a general commercial statute and are adequately covered by existing law. Paragraphs (g) and (*l*) make appropriate exclusions, but provision is made for coverage of deposit accounts and certain insurance money as proceeds.

■ Thus, it is clear that life insurance policies are excluded from Article 9 of the Uniform Commercial Code. As the Official Comment states, methods of transferring ownership and beneficial rights to a life insurance policy are adequately covered by existing law outside the Uniform Commercial Code.

§ 9104(7) states an exception with respect to proceeds (§ 9306). § 9306 refers to insurance payable by reason of loss or damage to the collateral and states that proceeds of such insurance is "proceeds" of the collateral. Subsection (c) provides that the security interest is continually perfected if the interest in the original collateral was perfected. The thrust of the exception then is that where there is casualty insurance on collateral, the casualty insurance proceeds may replace the collateral. That, of course, does not affect the exclusion relating to life insurance policies. See *Ettinger v. Central Penn National Bank*, 2 B.R. 385 (E.D.Pa.1979) where the proceeds of fire insurance on damaged personal property was held to be "proceeds" of the personal property pledged as collateral under the Uniform Commercial Code. The court there also stated, at page 393:

It is quite clear, therefore, that § 9–104(g) [now § 9104(7)] was not intended to be a general prohibition against security interests in all types of insurance, but only life insurance policies.

Equibank argues that life insurance contracts and cash payments made from life insurance contracts have generally been excluded from the scope of Article 9 of the Uniform Commercial Code, because typically the beneficiaries are the insured's family members; that the policies in question, however, were "keyman" policies, with the debtor corporation as the owner and beneficiary; and thus the theory of exclusion of life insurance contracts from Article 9 should not apply. However, § 9104(7) appears to be specific and does not yield to such analysis, especially in view of other lawful means of perfecting an interest in the life insurance policies which were not utilized.

As to Equibank's claim under its postpetition lien, we interpret that lien by its terms to extend only to those items of collateral generated by use or sale of the collateral covered by the security interest. Thus, casualty insurance on debtor's inventory, or accounts receivable generated by the sale of inventory, would be subject to Equibank's lien. But the lien does not extend to life insurance proceeds where, as here, the life insurance proceeds were not generated through the use of collateral securing the indebtedness to Equibank.

### Conclusion

For the reasons stated, the security interests held by Equibank did not extend to the proceeds of life insurance owned by the debtor corporation on the life of William Santini. An appropriate order will be issued.

### ORDER

After notice and hearing, it is ORDERED that the claim of Equibank that it has a lien in the proceeds of life insurance collected by the trustee because of the death of William Santini is refused and

disallowed. This is not an adjudication of the amount of Equibank's claim, nor its status as the holder of a secured claim upon other assets.