J-S08027-18

2018 PA Super 155

| | | |
|---|---|---|
| LARRY MILBY, IN HIS INDIVIDUAL CAPACITY, AND SOUTHERN CHRISTIAN MINISTRIES, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHYRELL POTE, EXECUTRIX OF THE ESTATE OF MARGARET B. SHAW, A/K/A MARGARET D. SHAW, A/K/A MARGARET SHAW, CHYRELL POTE, TERRY SHAW, AND ALL UNKNOWNS, | : | |
| | : | |
| CHYRELL POTE, EXECUTRIX OF THE ESTATE OF MARGARET B. SHAW, A/K/A MARGARET D. SHAW, A/K/A MARGARET SHAW, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN CHRISTIAN MINISTRIES, LARRY MILBY, TRUSTEE, | : | |
| | : | |
| APPEAL OF: LARRY MILBY, IN HIS INDIVIDUAL CAPACITY, AND SOUTHERN CHRISTIAN MINISTRIES, AND SOUTHERN CHRISTIAN MINISTRIES, LARRY MILBY, TRUSTEE | : | No. 1295 WDA 2017 |

Appeal from the Order entered August 18, 2017,
in the Court of Common Pleas of Blair County,
Civil Division, at No(s), 2015 GN 3762 & 2016 GN 630.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

OPINION BY KUNSELMAN, J.:                              **FILED JUNE 07, 2018**

Larry Milby and Southern Christian Ministries ("SCM") appeal from an

order in consolidated cases, denying their claims for redress and ejecting them

---

*Former Justice specially assigned to the Superior Court

from the Shaw Mobile Home Park ("Park") for failure to pay rent and comply with the Park rules. We affirm.

The relevant facts and procedural history of these cases are as follows. The parties have a landlord-tenant relationship spanning nearing 50 years. Since 2013, however, disputes between them have resulted in several lawsuits, including this one.

Larry Milby and his wife, Violet, have lived in a manufactured home in the Shaw Mobile Home Park since the early 1970s. When they first moved there, the Park was owned by Wayne and Margaret Shaw. Mr. Shaw died in 1996. Mrs. Shaw became the Park owner by virtue of his death. She was still living during part of the relevant period of this lawsuit, but died in 2016. Thus, her daughter Chyrell Pote, as executrix of her estate, is named as a defendant in one of these consolidated actions and as the plaintiff in the other. For simplicity sake, we will refer to the Shaws, the estate and the execurix collectively as the Park Owners.[1]

When the Milbys moved to the Park, the leases for all of the Park lots were verbal. According to Mr. Milby, the terms of the verbal lease included $35 per month in rent[2] with no termination or expiration date; the term of the

---

[1] The Shaw's son and Chyrell's brother, Terry Shaw, was also named as a party in one of these cases. The parties agreed to dismiss him from the case, which the court confirmed via an order dated May 25, 2016.

[2] We note for accuracy that there is a discrepancy regarding the amount of rent initially paid in the 1970s between the trial court's findings of fact, the allegations in the First Amended Complaint, and evidence of record.

lease "was like forever" with no end to it -- "it was for as long as you wanted to stay".   The Milbys' lot size was defined by an imaginary line between them and their neighbors, primarily based upon the area each resident maintained; the Park was never divided formally into lots.  Lease terms and conditions were the same for all tenants, except for the amount of rent; newcomers typically were charged a higher rent than existing tenants.  There were no specific written rules or regulations for the Park.

Gradually over time, the Milbys' rent increased in relatively minor increments, and when sewage lines were installed in the Park, the monthly rent included a fee to cover this additional cost.  Other increases were made randomly in amounts of $10 or $20 at a time to bring the older leases in line with newer leases.

In or around 2006, SCM began to lease lots in the Park.  SCM, is a not-for-profit Christian trust, formed in Kentucky.  It owns property in Kentucky, Florida and Pennsylvania.   The trust itself was never registered as a corporation with the Pennsylvania Department of State and never obtained a certificate of authority from the State to do business here.  Mr. Milby is the sole trustee of SCM.  The purpose of the trust is to aid and benefit working families who do not receive assistance from the government.   Under the trust, SCM has the power to manage trust real estate, including the power to lease, make repairs, and alterations.

SCM eventually acquired verbal leases for eight lots, placing mobile homes on seven of them (lots 2, 3, 9, 11, 12, 16 and 19). At some point in time, SCM took over leasing lot 16, the Milbys' personal lot. The remaining lot, (lot 15) SCM used for storage.

By 2015, rent for all of the SCM residential lots was $146 plus a $72 sewer fee ($218 total per lot); rent for the storage lot was $146. SCM subleased the residential lots for $520 per month.

Over the past few years, disputes over rent arose between SCM and the Park Owners. In 2013 and 2014, the Park Owners filed three ejectment actions against SCM. In the first action, the trial court, by order dated May 16, 2014, ejected SCM from lot 9 for failing to obtain permission from the Park Owners to place a home on the lot, and for failing to obtain a permit and inspection of the lot, in violation of the local building code. SCM did not appeal this ejectment.[3]

The second and third actions were consolidated, and after a hearing on April 27, 2015, the trial court concluded that the Park violated the Manufactured Home Community Rights Act ("MHCRA") for failing to have written leases. Ultimately, the trial court entered a decision on July 8, 2015, in favor of SCM on the ejectment actions.

---

[3] Although lot 9 is referenced in the First Amended Complaint, Mr. Milby and SCM indicated during the hearing that this lot was not in issue.

The Park Owners did not appeal the ejectment decision, but directed their attorney to send a letter, dated August 7, 2015, to SCM's attorney informing him that the Park Owners would be sending out new written leases to avoid future problems. Counsel further advised that he was directing the Park Owners to set corner markings to identify the dimensions of each lot. He also asked SCM's attorney to inform SCM, and Mr. Milby, as trustee, of these formal changes so there would be no issues.

A few months later, on November 2, 2015, SCM advised the Park Owners by letter that it would be paying rent only in the amount agreed to in the valid, original verbal leases made with Wayne Shaw prior to his death, and that pursuant to its calculation of rent due, SCM submitted a rent check in the amount of $936.[4] At the same time, SCM sent a Notice to Cease Criminal Acts and Notice of Needed Repairs to the Park Owners complaining about conditions in the Park and threatening criminal charges.

On November 5, 2015, the Park Owners sent SCM a notice informing SCM that:

> [t]his letter constitutes 60 days formal notice of the community owner's intent to offer the new, renewed or extended leases or shall increase rent and/or payables to the Owner/Lessor, from you, the Lessee. No increased rent or fee charges shall be effective against you prior to the 61st day after posting of this Notice, which has been done.

---

[4] Although the letter indicated a breakdown of this amount, the record is unclear why SCM reached this amount.

The notice further advised that "[y]ou, as the lessee shall have 30 days from the date of this mailing to either accept the new, renewed or extended rental agreement or to notify the Landlord/Owner of your intent to vacate within 30 days." The written leases, which SCM allegedly had requested since 2008, were forwarded with this letter.

The new written leases contained the rental amounts due for each lot and the effective dates. The new leases for the six residential lots (2, 3, 11, 12, 16 and 19) were to become effective February 1, 2016. The new rent amount would be $176 per month, ($30 more than the current rent of $146), plus the sewer fee of $72 per month ($248 total per lot). Until the effective date of the new leases, the current rent, $146 plus the sewer fee, was to be paid ($218 total per lot). The new lease for the storage lot (15), was to become effective sooner, on December 1, 2015, because it was a non-residential lease and not subject to the MHCRA. The new rent amount for that lot would be $148 per month (also $30 more than the current rent of $118). The Park Owners sent similar written leases to all other tenants of the Park.

On November 9, 2015, a few days after sending the written leases and a week after receiving the reduced rent check from SCM, counsel for the Park Owners returned SCM's $936 rent check and issued SCM a Notice of Violations. This notice advised SCM that it had violated the rules for non-payment of rent for the residential lots because the rent check was far below the $1,426 due for November. The notice further advised SCM that it violated Park rules by

sending the rent check to the attorney for the Park Owners rather than putting it in the Park's rent box. The notice warned SCM that eviction proceedings would be commenced if the full amount of rent for the residential lots was not paid within thirty (30) days. The letter accompanying the notice also indicated that the November rent for the storage lot, in the amount of $118, was delinquent.

SCM received both the notice for the new leases and the notice of violation of the existing leases on November 12, 2015.

Mr. Milby, as trustee for SCM, refused to sign the new written leases. According to him, many of the terms and conditions of the new leases were not consistent with the old verbal leases. In particular, the new leases restricted the number of parked vehicles tenants could keep on their lot and prohibited other items from being stored on the property, many of which Mr. Milby owned and stored on his lot. The lot dimensions were not consistent with what Mr. Milby thought they were. Despite Mr. Milby's misgivings about the new leases, all of the other Park tenants signed the new lease.

On December 8, 2015, Mr. Milby and SCM initiated this civil action. In late 2015, Mr. Milby and SCM filed a lawsuit *pro se* in federal court, raising similar issues to those in this case.[5] The federal suit was voluntarily dismissed sometime in 2016**.**

---

[5] It is unclear from the Trial Court Opinion, and the Notes of Testimony, 6/2/17 at 29-30, which lawsuit was filed first, the state action or the federal action. It is also unclear the exact date the federal lawsuit was withdrawn.

7

In their first amended complaint in this action, SCM and Mr. Milby alleged that certain dangerous and unacceptable conditions existed in the Park: uncapped, concrete sewer pipes protruding on the SCM lots; metal stakes stuck out of the ground to identify the boundaries of each lot; a damaged utility pole was leaning toward lot 12; two caved in holes from the outdated septic system remained unfilled on lots 12 and 16; and an area of ponding and stagnating water formed behind lot 3. Although SCM complained to the Park about these problems, they had not been addressed. Mr. Milby, in his individual capacity, and SCM filed this action alleging that these conditions constituted a private and/or public nuisance and that these conditions infringed upon their right of quiet enjoyment.

The complaint further alleged that because there were no written leases between the parties, as required under the MHCRA, the essential terms of the verbal leases were unclear. The complaint contends that Park Owners, by sending new leases, impermissibly modified the existing lease terms in contravention of the MHCRA. Consequently, Mr. Milby and SCM asked the court to declare the terms and conditions of the existing leases and the rights and obligations of the parties.

Finally, the complaint alleged that the Park Owners engaged in retaliatory conduct, prohibited under Section 398.16 of the MHCRA, which Mr. Milby and SCM sought to enjoin. Although they concede that some of the new requirements for the Park were reasonable, Mr. Milby and SCM contend that

8

most of the new rules were a deliberate attack upon them and were retaliatory in nature. They claim the retaliatory conduct includes: failing to repair dangerous conditions in the Park; encroaching on tenants' lots with stakes and signs; changing the designation of lot 15 from residential to storage; policing by one of the Park residents to harass and intimidate other Park residents; and imposing new lease terms on the tenants. The most egregious retaliation, they contend, was the thirty (30) day requirement to sign the new lease or move.

While the civil lawsuit filed by Mr. Milby and SCM was still pending, on January 15, 2016, the Park Owners issued a Notice to Quit for delinquent rent upon SCM because it failed to timely pay the full rent due for lot 15 under the new lease: an additional $30 dollars for December, 1, 2015, and $30 for January 1, 2016. The Park Owners directed SCM to remove itself from lot 15 within 15 days from the date of service.

On February 1, 2016, SCM paid $1,426 to the Park Owners for February rent. Despite this payment, on February 2, 2016, the Park Owners filed an ejectment action with the local Magisterial District Judge to remove SCM from all of its lots. The Park Owners claim the six verbal residential lot leases expired on January 31, 2016, under the MHCRA; the storage lot lease expired on November 30, 2015, under the Landlord and Tenant Act. Because all seven verbal leases had expired, and SCM failed to enter into new leases, the Park Owners claimed that they were entitled to take possession of all of the

9

SCM lots. Alternatively, the Park Owners sought ejectment of SCM for its failure to pay rent and comply with Park rules.

On February 17, 2016, the Magisterial District Judge found in favor of the Park Owners as to all seven lots. SCM appealed to the trial court, where both the ejectment action filed by the Park Owners and the pending civil action filed by Mr. Milby and SCM were consolidated.

After a bench trial on these consolidated matters, including a site view of the Park, the trial court issued an Order, dated July 18, 2017, granting the Park Owners ejectment/eviction of SCM from all seven lots. The trial court further entered judgment against SCM and in favor of the Park Owners in the amount of $13,908.45, representing unpaid rent from February 1, 2016 through July 31, 2017, and unpaid sewerage costs on lot 15. In addition, SCM remained liable for the new rental amount of $248 per month, per lot, from August 1, 2016, until the manufactured homes are removed. As to the civil action filed by Mr. Milby and SCM, the trial court dismissed the entire case for lack of standing and entered judgment in favor of the Park Owners. Although it dismissed this action based on standing, the trial court, nonetheless, addressed all claims raised in the first amended complaint, but concluded none had merit.

Mr. Milby and SCM timely appealed. They and the trial court complied with Pa R.A.P. 1925. Because its July 18, 2017 order and opinion provided a comprehensive analysis of the issues presented at trial, along with detailed

findings of fact and conclusions of law, the trial court only addressed the standing issue in its subsequent 1925(a) Opinion, dated August 18, 2017. For all other issues raised, the trial court relied on its prior opinion. In addressing the standing issue again, the trial court reconsidered its original conclusion and acknowledged that SCM may have standing to bring suit but still concluded that all of SCM's claims were meritless.

On appeal, Mr. Milby and SCM raised seven issues which we have rephrased for clarity and reordered for ease of discussion:

I. Whether the trial court erred in finding that Mr. Milby and SCM did not have standing to pursue an action against the Park Owners?

II. Whether the trial court erred in denying SCM's request to adopt and incorporate the trial court's prior findings of fact and conclusions of law from its order dated July 8, 2015?

III. Whether the trial court erred in finding that the Manufactured Home Community Rights Act did not apply to the claims Mr. Milby and SCM filed against the Park Owners?

IV. Whether the trial court erred in not affording Mr. Milby and SCM the presumption of retaliation under the Manufactured Home Community Rights Act and in determining that the actions of the Park Owners were not retaliatory?

V. Whether the trial court erred in determining that the Park Owners' new written leases were valid and enforceable under the Manufactured Home Community Rights Act?

VI. Whether the trial court erred in determining that the Park Owners were entitled to ejectment/eviction of SCM from the Shaw Mobile Home Park?

VII. Whether the trial court erred in determining the Park Owners were entitled to damages in *quantum meruit* for SCM's use of lot 15 of the Shaw Mobile Home Park as a residential lot?

11

Milby/SCM Brief at 4-5.

This Court's scope and standard of review on appeal following a bench trial is well-settled:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue ... concerns a question of law, our scope of review is plenary. The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating and Cooling LLC,* 100 A.3d 660, 664–65 (Pa. Super. 2014) (citation and quotation omitted). "'Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary.'" *Rellick-Smith v. Rellick*, 147 A.3d 897, 901 (Pa. Super. 2016) (*quoting Johnson v. Am. Std.*, 8 A.3d 318, 326 (Pa. Super. 2010)).

The crux of this appeal requires interpretation of the provisions of the Manufactured Home Community Rights Act, 68 P.S.398.1 *et seq.* This Act is not one which has been reviewed by our appellate courts with any regularity,

and in particular, not in recent times. Many years ago, we summarized the basic principles behind the MCHRA as follows:

> The purpose of this legislation is to give special protection to mobile home owners in mobile home parks. One reason for the distinction between mobile home park owners and other landlords is the hybrid type of property relationship that exists between the tenant who owns the home and the landlord who rents only the lot on which the mobile home sits. In most instances a mobile home owner in a park is required to remove the wheels and anchor the home to the ground in order to facilitate connections with electricity, water and sewerage. Thus, it is only at substantial expense that a mobile home can be removed from a park with no ready place to go. The legislature, while recognizing the right of the mobile home park owner to establish and publish reasonable rules and regulations relating to tenants in the park, has sought to prevent arbitrary evictions at a substantial expense to park residents.

*Malvern Courts, Inc. v. Stephens*, 419 A.2d 21, 23 (Pa. Super. 1980). Although manufactured homes are frequently referred to as "mobile homes", they are not easily movable and tend to be more of a long-term housing option. For this reason, the Legislature has afforded special protection to those who lease property in a manufactured home park.

As a manufactured home park, the Park is subject to the provisions of the MHCRA. Thus, in analyzing the issues in this appeal, we must give consideration to the purpose of the MHCRA's enactment, legislative intent and the literal working of the MHCRA. *Id.*

Regarding the civil action Mr. Milby and SCM filed against the Park Owners, the trial court dismissed all of these claims. Mr. Millby and SCM did

13

not appeal the trial court's findings of fact and conclusions of law related to their claims of public and private nuisance, breach of the implied covenant of quiet enjoyment, or their request for a declaration judgment as to the essential lease terms and conditions. Any issues related to these claims have therefore been waived. *See* Milby/SCM Brief at 4-5.

Their only remaining claim from that lawsuit is for retaliation under the MHCRA.[6] Because that issue is so interwoven with the ejectment action filed by the Park Owners, in reality, only one dispute remains, i.e. whether the Park Owners were justified in filing their ejectment action as the trial court determined, or whether the Park Owners' actions were retaliatory under the MHCRA, and therefore they could not proceed with new leases and seek ejectment.

Turning to the specific issues raised on appeal, Mr. Milby and SCM first allege that the trial court erred in finding that neither of them had standing to pursue their claims. Since the only remaining claim they allege is whether the Park Owners' actions constituted retaliation, the question of standing is somewhat moot. We must decide whether they can allege on offense in their case, the same claim they make on defense in the Park Owners' ejectment case.

_____

[6] In their complaint, they sought enjoinment of the reliatory actions, including the presentation of a new lease, along with compensatory damages, restitution, treble damages and attorneys fees under the MHCRA. No such evidence of damages was presented at trial, and the court denied all claims.

In its first issue on appeal, Mr. Milby and SCM argue that the trial court erred in concluding that neither Mr. Milby, in his individual capacity, nor SCM had standing to bring an action against the Park Owners.

"Generally, a party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish . . . standing to maintain the action." *Kuropatwa v. State Farm Ins. Co.,* 721 A.2d 1067, 1069 (Pa. 1998). *See also Pittsburgh Palisades Park, LLC v. Commonwealth,* 585 Pa. 196, 888 A.2d 655 (Pa. 2005) (standing to sue is a threshold requirement to judicial resolution of dispute). The general principle behind the necessity for standing to sue is "to protect against improper plaintiffs.'" *Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 417–18 (Pa. Super. 2010) (*quoting Szoko v. Township of Wilkins,* 974 A.2d 1216, 1219 (Pa. Cmwlth. 2009). "Standing requires an aggrieved party to show a substantial, direct and immediate interest in the subject matter of the litigation." *In re Mengel*, 429 A.2d 1162, 1164 (Pa. Super. 1981) (*quoting William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975)).

These traditional standing requirements apply only when a specific statutory provision for standing is lacking. "In each case involving statutory standing, the question involved is whether "the interest the plaintiff seeks to protect is arguably within the zone of interests to be protected by the statute . . . . Accordingly, the answer to any question concerning statutory standing involves a careful analysis of the relevant statutory scheme." Statutory

standing—Introduction, 20 West's Pa. Practice, Appellate Practice § 501:13 (citations omitted).

"The MHCRA governs the rights and duties of **lessees,** owners and operators of manufactured home parks." 68 P.S. § 398.1 (emphasis added). In particular, the MHCRA provides a private right of action for damages for violation of one's rights afforded by the MHCRA. Section 398.14 of the MHCRA provides:

> The Attorney General shall have the power and it shall be his duty to enforce the provisions of this act, *but in no event shall an individual be prohibited or otherwise restricted from initiating a private cause of action pursuant to any right or remedy conferred by this act*.

68 P.S. § 398.15 (emphasis added).

In their civil case, Mr. Milby and SCM claim that the Park Owners failed to comply with the requirements of the MHCRA and impermissibly retaliated against them. Section 398.16 of the MHCRA states:

> Any action by a manufactured home community owner or operator to recover possession of real property from a manufactured home community lessee or to change the lease within six months of a lessee's assertion of rights under this act or any other legal right shall raise a presumption that such action constitutes a retaliatory and unlawful eviction by the owner or operator and is in violation of this act.

68 P.S. § 398.16.

Specifically, this retaliation section of the MHCRA applies to a "lessee". Section 398.2 of the MHCRA defines "Lessee" as [a] person who **rents** a

16

manufactured home community **space** from a lessor pursuant to the terms of a lease." 68 Pa.C.S.A. § 398.2 (emphasis added). "Lessor" is defined as "the owner or operator of a manufactured home community who **rents a manufactured home space to a lessee** . . . ." 68 P.S § 398.2 (emphasis added).

Mr. Milby, in his individual capacity, does not rent a manufactured home space directly from the Park; only SCM does. He, therefore, is not a "lessee" under the MHCRA. Consequently, Mr. Milby personally does not have standing to raise any claims pursuant to the MHCRA. We, therefore, affirm the trial court's decision as to Mr. Milby's lack of standing in his individual capacity.

Turning to SCM's standing, although SCM is a lessee pursuant to the MHCRA, the Park Owners argue that SCM, as a business trust formed in Kentucky, was required to register with the Corporation Bureau in order to pursue this lawsuit. Foreign associations, including business trusts, are typically required to register with the State. See 15 Pa.C.S.A. § 411.[7]

---

[7] That section provides in relevant part:

> **(a) Registration required.--**Except as provided in section 401 (relating to application of chapter) or subsection (g) [pertaining to foreign insurance corporations], a foreign filing association or foreign limited liability partnership may not do business in this Commonwealth until it registers with the department under this chapter.
>
> **(b) Penalty for failure to register.--**A foreign filing association or foreign limited

However, due to the nature of SCM's business activity, SCM contends that it is not considered a "business trust" as that term is defined under Title 15.

The definition of business trust under Section 9501 of Title 15 specifically excludes "[a] trust for the benefit of one or more investors with respect *to a lease of real or personal property*, unless the instrument creating the trust is filed under this chapter." 15 Pa.C.S.A. § 9501(c) (emphasis added). SCM claims that the trust falls under this exclusion from the state's registration requirements. We agree.

SCM's sole business in Pennsylvania is the leasing of property for the benefit of its investor, Mr. Milby. As such, SCM falls under the lease exclusion to the definition of "business trust." Consequently, SCM is not required to register under the Corporations Code, 15 Pa.C.S.A. section 411[8], and may maintain this cause of action. We, therefore, reverse the trial court's decision regarding SCM's lack of standing.

Because we have concluded that Mr. Milby did not have standing as a plaintiff in his individual capacity in the civil action he filed with SCM, and Mr. Milby was never a named defendant in the ejectment action filed by the Park

---

liability partnership doing business in this Commonwealth may not maintain an action or proceeding in this Commonwealth unless it is registered to do business under this chapter.

15 Pa.C.S.A. § 411.

[8] The Park Owners argue that SCM is doing business in Pennsylvania without having registered as required. We do not get to that analysis since SCM is not the type of foreign association required to register before doing business here.

Owners, for accuracy and simplicity, we will not be mentioning him as a party in discussing the remaining issues on this appeal. The rest of our discussion will focus on the only parties left in this dispute, namely SCM and the Park Owners.

In its second issue on appeal, SCM argues that the trial court erred in denying its request to adopt and incorporate the trial court's findings of fact and conclusions of law from its order dated July 8, 2015. In that case, the trial court denied the two ejectment actions filed by the Park Owners, 2013 GN 2583 and 2014 GN 1625, regarding the same lots at issue here. SCM complains that the trial court granted the Park Owners' request to incorporate and give preclusive effect to its previous decision, dated May 16, 2014, where it granted the Park Owners ejectment regarding lot 9. SCM believes the subsequent ejectment actions should be given similar treatment. We disagree.

The law provides that where there has previously been rendered a final judgment on the merits by a court of competent jurisdiction, the doctrine of *res judicata* will bar any future suit on the same cause of action between the same parties. **See** *10 Standard Pennsylvania Practice 2d* § 65:32.

First, we note that SCM did not assert *res judicata* as an affirmative defense in its answer and new matter filed with the trial court. The proper vehicle to assert *res judicata* is a responsive pleading, i.e., an answer, containing new matter. **Callery v. Mun. Auth. of Blythe Twp.**, 243 A.2d

385, 386-87 (Pa. 1968). Such a course is contemplated by Pa.R.C.P. 1030: "all affirmative defenses, including * * * *res judicata* * * * shall be pleaded in a responsive pleading under the heading 'New Matter.'" Pa.R.C.P. 1030(a).

Here, SCM raised res judicata for the first time in its Post-Hearing Memorandum. The court allowed the submission of trial briefs after the hearing on June 2, 2017. Since it was not properly raised at that time, we conclude that the issue of *res judicata* is waived on appeal. See Pa.R.C.P. 1032(a) and Pa. R.A.P. 302(a).

Second, because SCM did not identify which facts or conclusions of law from the July 8, 2015 decision it thought should apply to this case, the issue is not properly developed on appeal and, therefore, waived on this basis. **See** Milby/SCM Brief at 24-29. "The failure to develop an adequate argument in an appellate brief may [ ] result in waiver of the claim" under Pa. R.A.P. 2119. **Commonwealth v. Gonzalez***, 608 A.2d 528, 531 (Pa. Super. 1992). We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem issue to be waived. **See Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007).

Finally we note that, even if SCM properly asserted the defense, the trial court's determination that SCM should not be ejected in the 2013 or 2014 actions does not preclude a new set of circumstances from giving rise to a subsequent ejectment action.

20

For these reasons, we find that the trial court did not err in denying SCM's request to adopt and incorporate the trial court's prior findings of fact and conclusions of law from its order dated July 8, 2015.

In its third issue, SCM claims the trial court erred in concluding that the MHCRA was not applicable to SCM's claims against the Park Owners. Although this issue, as stated, refers to "claims" in the plural sense, we assume, since SCM only appealed the trial court's decision on one of its claims, that SCM means its retaliatory eviction claim. The trial court used a two-part analysis to decide that the MCHRA did not apply to the retaliation claim. SCM challenges both.

First, the trial court found that the verbal leases at issue were month to month, and that they expired on January 31, 2016. Trial Court Opinion, 8/18/17, at 39. The trial court also concluded that there was no valid and enforceable agreement between the parties entitling SCM to a "lifetime lease." *Id.* We agree.

In reaching its decision, the trial court relied in part on the MHCRA. Section 4.1 of the MHCRA provides:

> (a) Every lease for a manufactured home space shall be in writing and shall be for a duration term of one month, unless a longer period is mutually agreed upon by both the lessee and manufactured home community owner, and shall be renewable.

68 P.S. § 398.4.1.

Although the prior, verbal leases between the Park Owners and SCM were not in writing as required by the MHCRA, the trial court's interpretation that the leases were month to month is consistent with Section 4.1 of the MHCRA and the Park Owners' testimony.

The trial court additionally relied upon the long-standing common law principle that a verbal lease, which does not establish a fixed term but provides for monthly rent, creates a month-to-month tenancy. *See Hollis v. Burns*, 13 W.N.C. 241 (Pa. 1882). Here, the evidence showed that the lease had no fixed term, but rent payments were made on a monthly basis.

In arguing that the trial court erred in this regard, SCM also relies on section 250.202 of the Landlord and Tenant Act, *Leases for more than three years*, for the proposition that their leases were year to year. That section provides:

> Real property, including any personal property thereon, may be leased for a term of more than three years by a landlord to a tenant or by their respective agents lawfully authorized in writing. Any such lease must be in writing and signed by the parties making or creating the same, otherwise it shall have the force and effect of a lease at will only and shall not be given any greater force or effect either in law or equity, notwithstanding any consideration therefor, unless the tenancy has continued for more than one year and the landlord and tenant have recognized its rightful existence by claiming and admitting liability for the rent, in which case the tenancy shall become one from year to year.

68 P.S. § 250.202.

22

This section requires leases with a term of for more than three years to be in writing otherwise they will have the effect of a lease at will only (i.e. month to month). Unless, however, more than a year into the tenancy, the parties acknowledge that the lease was for a period of more than three years, but did not reduce it to writing, then it shall become a year to year lease.

No evidence supports a finding that this applies to the SCM leases. Contrary to SCM's argument, there was absolutely no evidence that SCM and the Park Owners ever acknowledged that the subject leases were for **a term of more than three years.** Ms. Pote testified that "as long as anybody would rent from me and would pay their rent and not give any problems that we couldn't mutually work out and come to an understanding . . . that for as long as you could we could work it out to stay there . . . ." N.T., 6/2/17, at 127. Indeed, Ms. Pote immediately qualified her statement by saying the leases were, nonetheless, month to month. **Id**.

SCM offered no specifics about the term of any of its leases with the Park, other than Mr. Milby's understanding as to the duration of the lease, being "forever" and having "no end to it." The trial court disagreed.

The trial court concluded that the SCM leases were verbal, they were presumed to be month-to-month,[9] and there was never any agreement that SCM was entitled to a lifetime lease. Trial Court Opinion, 8/18/17, at 39.

---

[9] In support of the presumption that the leases were month-to month, the trial court cited **Hollis v. Burns**, 13 W.N.C. 241 (Pa. 1882) and **Local 323 of the United Food and Commercial Workers Union v. Commonwealth Dept.**

Having concluded the leases were monthly rather than yearly, the trial court further concluded that the verbal lease for the residential lots expired on January 31, 2016, not December 31, 2016, as argued by SCM. Moreover, SCM offered no evidence regarding the start and end date of its alleged "year-to-year" leases. It merely assumes the yearly leases ran from January 1 to December 31, with no supporting evidence. Over the years, SCM acquired several lots at various times; nothing indicates that these leases all started on January 1. Therefore, we agree with the trial court regarding the first part of this analysis: the trial court correctly determined the verbal leases were monthly and expired on January 31, 2016.

Second, based on the fact that the leases were month to month, and had expired, the trial court then relied on outdated case law[10] to conclude that the MCHRA did not apply, and that SCM could not pursue its "retaliatory eviction" claim. Trial Court Opinion, 8/17/18, at 42.

Since those cases were decided, the Legislature amended both the MHCRA and the Landlord and Tenant Act. In amending the Mobile Home Park Rights Act, now the MHCRA, the Legislature provided a more comprehensive framework governing the relationship between an owner of a manufactured home park and a potential or current lessee of space in such a park.

---

*of Transp.* 571 A.2d 557, 569 (Pa. Commw. 1990). SCM did not dispute this authority or offer any authority to the contrary.

[10] *Cole v. Czegan*, 722 A.2d 686 (Pa. Super. 1998) *and Lincoln Warehouses v. Crompton*, 657 A.2d 994 (Pa. Super. 1995).

As amended, the MHCRA specifically applies to new leases and extensions and renewals of manufactured home community spaces. 68 P.S § 398.4.1 note. The MHCRA provides:

This Act applies to:

> (1) New sales and leases of manufactured home community spaces entered into after the effective date of this section.
>
> (2) Extensions and renewals of leases of manufactured home community spaces entered into after the effective date of this section.

68 P.S. § 398.4.1 Historical and Statutory Note, (as amended 2010, Oct. 19, P.L. 546, No. 80, § 2, effective in 150 days).

With respect to new leases, the MHCRA sets forth what information an owner must provide to a *prospective* lessee, i.e. a circumstance where no lease yet exists. Thus, the MHCRA now applies in those situations. *See* 68 P.S. § 398.6. The MHCRA also governs extensions and renewals, a circumstance where no lease may be in effect. 68 P.S. § 398.4.1, note. It further governs an owner and lessee's actions where, as here, the lessee has decided not to accept a proposed lease. 68 P.S. § 398.13. Thus, the MHCRA applies even when a former lease is no longer in effect.

Thus, for these reasons, we conclude that the MHCRA clearly applied in this case. This includes the retaliatory eviction provision of section 398.16 of the MHCRA. The trial court, therefore, erred when it concluded that otherwise.

However, under the facts before us, we conclude that the error was harmless, because the trial court further analyzed SCM's retaliatory eviction claim as if the MHCRA applied. The court stated, "even if the court is in error and the MCHRA is applicable, [] SCM did not prove the [Park Owners] engaged in a retaliatory eviction under the facts and circumstances of this case." Thus, the Court completed an analysis of SCM's claim under the MCHRA, and in doing so, found against SCM. This decision forms the basis of SCM's next allegation of error.

In its fourth issue on appeal, SCM claims that the trial court erred in not affording SCM the presumption of retaliation under the MHCRA, and in determining that the actions of the Park Owners were not retaliatory.

Section 398.16, *Retaliatory evictions*, of the MHCRA provides in pertinent part:

> Any action by a manufactured home community owner or operator to recover possession of real property from a manufactured home community lessee or to change the lease **within six months of a lessee's assertion of rights under this act or any other legal right** shall raise a presumption that such action constitutes a retaliatory and unlawful eviction . . . and is in violation of this act. Such a presumption may be rebutted by competent evidence. . . .

68 P.S. § 398.16. Notably, a retaliatory eviction, entitling a lessee to the presumption of retaliation does not arise only under the circumstances of formal eviction. It also arises where there is change of lease terms within six months of a lessee having asserted his rights under the MHCRA.

SCM claims the Park Owners' actions in increasing the rent, changing the terms of the existing lease and initiating this ejectment action, all within six (6) months of SCM asserting its rights under the MHCRA, entitled them to such a presumption. Additionally, they claim that Ms. Pote, by her own testimony, indicated there were other reasons why she wanted Mr. Milby and SCM out of the Park, which were not proper bases for eviction under the MHCRA.

With respect to the six-month time frame in this case, we believe the following timeline is critical to determine whether the Park Owners took any retaliatory action against SCM:

| 2013 -2014 | Park Owners filed three separate ejectment actions against SCM. |
| --- | --- |
| May 16, 2014 | Court order: Park Owners won first ejectment action for lot 9 only. |
| April 27, 2015 | Hearing held on remaining two ejectment actions. |
| July 18, 2015 | Court order: Park Owners lost other two ejectment actions because no written leases. |
| August 7, 2015 | Park Owners sent letter to SCM attorney advising that new written leases would be forthcoming. |
| November 2, 2015 | SCM sent reduced rental payment for November to attorney for Park Owners with Notice to cease criminal acts and Notice of needed repairs. |
| November 5, 2015 | Park Owners sent Notice of intent to offer new leases and copies of new leases for all SCM lots. New leases provided effective date for storage lot December 1, 2015; effective date for residential lots February 1, 2016. |

| November 9, 2015 | Park Owners returned reduced rental check with Notice of violations; sent a warning that eviction action would be filed if rent not paid in full, within thirty days. |
|---|---|
| November 12, 2015 | SCM received both the 11-5-15 Notice of intent to enter new leases (with the new leases enclosed) and the 11-9-15 Notice of violations and warning of eviction action. |
| December 8, 2015 | Milby and SCM file a civil lawsuit in Blair County against the Park Owners for public and private nuisance, breach of implied covenant of quiet enjoyment, declaration of rights and essential lease terms, and retaliatory eviction. |
| Late 2015[11] | Milby and SCM file a federal civil action against the Park Owners. |
| January 15, 2016 | Park Owners sent a Notice to Quit for delinquent rent on lot 15. |
| February 1, 2016 | SCM pays full rent under verbal leases. |
| February 2, 2016 | Park Owners file ejectment action. |
| February 17, 2016 | Court Order from Magistrate: granting Park Owners eviction claim on all lots leased by SCM. |
| March 2016 | SCM appealed magistrate decision. |
| May 25, 2016 | Case consolidated for trial with SCM and Milby civil action from 12-8-15. |
| June 2, 2017 | Bench trial on consolidated claims. |
| August 17, 2017 | Court order: granting Park Owners' request to evict on all lots leased by SCM, and dismissing all claims filed by Milby and SCM. |

---

[11] As previously mentioned, the exact filing date of this action is not in any of the Trial Court Opinions.

The trial court determined that the presumption of retaliation did not apply because the Park Owners filed their ejectment action on February 2, 2016, which was more than six months from the order in the prior ejectment action dated July 8, 2015. Trial Court Opinion, 8/18/17, at 43.

SCM argues the trial court seemingly ignores that in this consolidated action, SCM filed suit on December 8, 2015, alleging unsuitable conditions in the park as well as this retaliation claim. It argues that the trial court also ignored the filing of federal lawsuit in late 2015. *Id.* at 15. SCM further claims it sent a Notice to cease criminal acts and Notice of needed repairs on November 5, 2015, and that the Park Owners conceded that this Notice constituted one of the many reasons for the ejectment action. N.T., 6/2/17, at 123-24.

The Park Owners argue that the ejectment action they filed in February 2016, was not retaliatory, but merely the exercise of lawful rights provided to the owner of a manufactured home residential community by virtue of the MHCRA or otherwise. Certainly, both parties engaged in a flurry of notices and lawsuits against each other between July 8, 2015 and February 3, 2016. It is difficult to sort out who acted first and in response to what, or if either party "retaliated" against the other in this chicken versus egg scenario. Even if we assume that the trial court erred and the Park Owners' actions constitute a presumption of retaliation under the MHCRA, we find the end result of the litigation would not change; the trial court found that any such presumption,

if it existed, was sufficiently rebutted by competent evidence, and, for reasons we will discuss, we agree. Thus, we need not determine whether the trial court erred in not affording SCM the presumption of retaliation.

The trial court correctly concluded that the presumption of retaliation was sufficiently rebutted by competent evidence of Park Owners non-retaliatory motives in this case. Significantly, SCM's own actions in failing to sign the new leases and failing to pay the rent due gave the Park Owners non-retaliatory reasons to file their ejectment action.

Regarding their motive for drafting the new leases, the Court concluded that the Park Owners prepared written leases to comply with the MHCRA and in response to its opinion that they had "technically" violated the MHCRA for not having them. *Id*. at 40. Although SCM claims terms in the leases were retaliatory, the court observed that the Park Owners prepared the same leases for all of its lessees, and all other lessees executed them, except for SCM. *Id*. at 43.

Regarding the failure to pay rent, unequivocally, the court concluded that SCM failed to pay the correct amount of rent due on November 1, 2015, and February 1, 2016, thus entitling the Park Owners to immediate ejectment under the MHCRA. *Id*. Thus, SCM's own actions rebutted any presumption of retaliation by the Park Owners. On this issue, the findings of the trial court are supported by competent evidence and the trial court committed no error in the application of the law.

In its fifth issue, SCM argues that the trial court erred in concluding that the new, proposed written leases were valid and enforceable under the MHCRA. SCM again claims the old leases had not expired. Additionally, SCM claims that the rent and rules in the new proposed leases varied from the old, verbal leases, were retaliatory in nature and not reasonable in contravention of the MHCRA. In response, the Park Owners maintain that by developing the new proposed leases and presenting them to SCM, they complied with all time requirements, disclosures and attachments as required by the MHCRA.

In relation to this issue, the trial court concluded:

21. Upon review of [the leases], we find that <u>all</u> of the proposed terms and conditions of the lease agreement presented to Milby and [SCM] for Lots 2, 3, 11, 12, 16 & 19 (residential lots) . . . as well as lot 15 (storage lot) . . . are <u>fair</u> and <u>reasonable</u>. This would include the modest $30 per month increase in rent.

22. We find that the terms and considerations set forth in the proposed written lease agreements are clear and certain. Such proposed terms address what is required under the M.H.C.R.A., e.g. rent, fees, service charges, utilities, duration of the lease and the community rules and regulations. As such, we see no reason and find no basis to grant Milby and [SCM] their requested declaratory relief.

30. After the April 27, 2015 trial before the undersigned, Shaw fully complied with the M.H.C.R.A. in preparing written lease agreements for all of its lessees . . . .

Trial Court Opinion, 7/18/17, at 41, 43. We agree.

Because the old verbal leases expired, it was entirely appropriate for the Park Owners to offer new written leases, subject to the requirements of the MHCRA. SCM claims, however, that they impermissibly changed the amount

of rent. Under the MHCRA, an owner is entitled to seek rental increases ***once per year in any*** amount. ***See*** 68 P.S. § 398.4.1(b) (emphasis added). SCM presented no evidence that there had been another rent increase within a year preceding this increase.[12] Additionally, the Park Owners did not increase the rent during the term of the lease (which would have been prohibited under 68 P.S. section 398.6). Instead, they gave proper notice of the proposed rent increase, and waited the required sixty (60) days before the increase became effective. ***See*** 68 P.S. § 398.13(e).

SCM also alleges that the proposed leases were invalid because the rules and regulations contained therein differed from the prior leases and were not reasonable.

Section 398.4 of the MHCRA permits a manufactured home community owner to establish rules and regulations for the community. It provides in pertinent part:

> (a) A manufactured home community owner may **at any time** establish **fair and reasonable** rules and regulations reasonably related to the health, safety and upkeep of the community, provided the rules and regulations are not arbitrary or capricious and are included in any written lease and delivered to existing lessees and are posted in the public portion of the community office or other conspicuous and readily accessible place in the manufactured home community.

---

[12] We note, the increase was modest, about a 14% increase from the rent they were previously charging.

68 P.S. § 398.4 (emphasis added). Clearly, this section specifically allows a manufactured home park owner to establish rules at any time. Moreover, the Park Owners included the new rules with the proposed leases and posted them, giving proper notice. The fact that that the rules differed from before is of no consequence.

This section requires that the rules and regulations be fair and reasonable and be reasonably related to the health, safety and upkeep of the community. The trial court found that all of the terms and conditions in the proposed leases were fair and reasonable. Trial Court Opinion, 7/18/17, at 41. We agree. In reviewing the leases, we see nothing so extreme or out of the ordinary to conclude that the rules and regulations were not reasonable. Rather, the terms and conditions are fairly consistent with those of modern day leases.

Lastly, SCM claims that because the proposed leases gave the lessee only thirty (30) days to sign them or move, they were retaliatory in nature. However, this time frame is exactly what Section 398.13 of the MHCRA requires. Thus, the Park Owners gave the time required by the law, albeit no more.

As previously noted, contrary to being retaliatory toward SCM, the proposed leases actually provided greater rights to SCM than other tenants. The proposed leases for all other tenants of the Park expressly prohibited subleasing. The Park Owners, however, granted an exception to SCM under

33

its new leases and allowed it to continue subleasing the lots in dispute to the residents living in the SCM manufactured homes. As the trial court noted, the Park Owners provided a specific exception for the benefit of SCM, considering that SCM was already subleasing six or seven lots. Trial Court Opinion, 7/18/17, at 26. Thus, the trial court did not err when it concluded that the proposed lease agreements were not retaliatory, and that they were valid and enforceable.

In its sixth issue on appeal, SCM argues that the trial court erred in evicting/ejecting SCM. Because SCM's leases expired and it failed to sign the new ones, the trial court concluded that the Park Owners were entitled to ejectment. We agree.

Under section 250.501 (a.2)(1) and (c)(2) of the Landlord and Tenant Act, recovery of the lots was possible if SCM no longer wanted to reside in the Park or if SCM was evicted under Section 3 of the MHCRA. Although only one was necessary, both of these bases for recovery were satisfied in this case.

As we explained above, the leases for the residential lots expired on January 31, 2016. The expiration of the leases coupled with SCM's refusal to sign the new leases justified their ejectment, so long as the new leases complied with the MHCRA, which they did. The trial court properly interpreted SCM's refusal to sign as a rejection of the leases (i.e. a decision that they no longer wanted to reside there) giving the Park Owners grounds for ejectment. The failure to pay rent and comply with the rules of the Park are grounds for

eviction and serve as grounds for possession and/or ejectment under section 398.3 of the MHCRA and section 250.501 of the Landlord Tenant Act.

In addition, SCM did not pay the full amount of rent due for November and therefore provided the Park Owners with separate grounds for eviction. We note that SCM failed to pay increased rent for February. Although the trial court found that February's unpaid rent increase constituted grounds for eviction, we disagree, because the increased rent did not take effect until March 2016. *See* 68 P.S. § 398.13(f) (giving manufactured home lessees who choose not to enter into a new, renewed or extended rental agreement **60 days** from the date of notification of intent to vacate the manufactured home community to enter into contract to sell or to relocate the manufactured home). Here, the notice was given December 12, 2015. Sixty (60) days expired on February 12, 2016. Therefore, increased rent was not due until March.

Although the failure to pay increased rent for February was not grounds for eviction, the failure to pay full rent for November, and the failure to sign the new leases were proper grounds. Consequently, we find the trial court did not err in granting eviction.

Finally, in its seventh appeal issue, SCM argues that the trial court erred in concluding that the Park Owners were entitled to payment in *quantum meruit* for lot 15 as a residential lot.

35

Regarding the Park Owners's *quantum meruit* claim, the trial court

concluded:

34. [SCM] did not receive permission from [the Park Owners] to hook up a trailer on Lot 15 to the township sewer service.

35. [The Park Owners pay] the continuing sewer charges at $72 per month to the F.T.W.S.A. and will continue to do so until the sewer connection is removed from Lot 15.

36. [SCM is] financially responsible to [Park Owners] for the difference in rent for a storage lot (Lot 15) and [SCM's] improper use of it as a residential lot.

37. The difference in rent for Lot 15 is $100 per month (formerly $118 per month for a storage lot and $218 per month for a residential lot; now with the proposed new written lease $148 per month for a storage lot and $248 per month for a residential lot).

Trial Court Opinion, 7/18/17, at 44-45. We agree.

The principles underlying the theory of *quantum meruit* are expressed

in the Restatement, Restitution, which states: "'A person who has been

unjustly enriched at the expense of another is required to make restitution to

the other.'" ***Zawada v. Pennsylvania Sys. Bd. of Adjustment, Bhd. of Ry.***

***& S. S. Clerks, Freight Handlers, Exp. & Station Emp.***, 140 A.2d 335, 340

(Pa. 1958) (*quoting* Restatement, Restitution §1).

Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred. ***Schenck v. K.E. David, Ltd.,*** 666 A.2d 327 (Pa. Super. 1995).

The elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be

> inequitable for defendant to retain the benefit without payment of value. (citations omitted).

***Durst v. Milroy Gen. Contracting, Inc.***, 52 A.3d 357, 360 (Pa. Super. 2012) (*quoting* **Mitchell v. Moore**, 729 A.2d 1200, 1203–04 (Pa. Super. 1999). These elements are undoubtedly satisfied in this case.

Although SCM refused to formally enter into new leases, SCM has retained the benefits of continuing to use the lots in the Park and collect rent from its sublessees. Particularly, with respect to lot 15, SCM did not receive permission from the Park Owners to hook up a trailer to township sewer services on that lot. Because this lot was used as a residential lot with sewer service, and the Park Owners paid the township for the service, it was appropriate for the trial court to order SCM to pay the residential rate. Therefore, the trial court properly awarded the Park Owners damages in the amount of the current residential rental rate for lot 15.

In conclusion, we find the trial court erred in finding that SCM lacked standing, and that the MHCRA did not apply to the claims SCM filed against the Park Owners. However, these errors were harmless because we agree with the trial court that SCM failed to prove its claims in the civil action against the Park Owners, and the Park Owners are entitled to eviction of SCM. We affirm the remainder of the court's decisions in this case, namely: that Mr. Milby lacked standing to sue in his individual capacity; that *res judicata* (regarding the prior eviction actions) did not apply in this case; that even if SCM was entitled to a presumption of retaliation under the Manufactured

Home Community Rights Act, the Park Owners rebutted the presumption due to SCM's own actions; that the Park Owners' new written leases were valid and enforceable under the Manufactured Home Community Rights Act; that the Park Owners were entitled to ejectment/eviction of SCM from the Shaw Mobile Home Park; and finally, that the Park Owners were entitled to damages in *quantum meruit* for SCM's use of lot 15 of the Shaw Mobile Home Park as a residential lot.

Order affirmed.

Lazarus, J. joins this Opinion.

Stevens, P.J.E. concurs in result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/2018