J-S14032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER PETITTI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICIA A. PETITTI | : | No. 1474 MDA 2025 |

Appeal from the Order Entered October 6, 2025
In the Court of Common Pleas of Berks County
Civil Division at No. 25-781

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: MAY 26, 2026**

Christopher Petitti (Appellant) appeals *pro se* from the order dismissing the contempt petition he filed in the underlying protection from abuse (PFA) action involving Patricia A. Petitti (Wife).[1]  We affirm.

On March 6, 2025, the trial court entered a two-year PFA order which excludes Wife from Appellant's residence.  On September 2, 2025, Appellant filed a contempt petition alleging that Wife violated the order by calling police to his residence, and "falsely enlisting law enforcement intervention for the purpose of harassing" Appellant.  TCO at 2.  The trial court held a hearing on October 6, 2025.  Both parties appeared *pro se*, and there were no other witnesses.

---

[1] The trial court described the parties as "estranged."  Trial Court Opinion (TCO), 12/19/25, at 1.

Appellant testified that on August 11, 2025, he and the parties' adult daughter, Brianna Notaro, got into an argument at Appellant's residence. N.T., 10/6/25, at 4. Appellant stated that Ms. Notaro "called [Wife] about this argument," leading Wife to call police.[2] *Id.* According to Appellant, Wife "violated the PFA order by calling the police." *Id.* Appellant claimed the incident was "harassment by [Wife], who showed up at the property waiting for police." *Id.* at 5. Appellant stated:

> [Wife] contacted a third party to come to my property and harass me. [Wife] called the police. I have the police report number. I tried to get the police report, but they said it needed to be subpoenaed from a judge and I didn't have that power. So I sit here today with that testimony, and that is all I have.

*Id.* at 6.

In response to Wife's questions, Appellant testified that he never spoke with the police. *Id.* at 8-9. He described Wife as being "right outside the house," but conceded that she did not "step foot" on the property. *Id.* at 9.

Wife testified that on the day of the incident she received five missed calls from Ms. Notaro. *Id.* at 11. Wife stated that when she returned the calls, Ms. Notaro "was hysterical" and "crying." *Id.* She explained that she called the police because she was worried about Ms. Notaro, who was pregnant, but made it "very clear" to police that she "was not permitted to step foot on that property." *Id.* at 11-12. Wife added that she also called

_____

[2] Appellant attempted to introduce text messages from Ms. Notaro, but the trial court excluded the text messages because Ms. Notaro was not present to authenticate them. *Id.* at 4-5.

- 2 -

Appellant's sister and brother-in-law, who "live very close" to Appellant. *Id.* at 12. She stated that she "advised them of my discussion with our daughter," and "asked them to go down as I am not permitted on the property and I was truthfully very afraid for my daughter." *Id.*

Wife further testified that she drove to the residence, and arrived after the police and Appellant's sister and brother-in-law. *Id.* She stated that she "parked not even on the same block nor on the same side of the street of the home" and "never left my vehicle." *Id.* at 13. Wife testified that after the police spoke with Ms. Notaro and Appellant's sister and brother-in-law, Ms. Notaro got into Wife's vehicle. *Id.* Wife reiterated that she "never stepped foot on the property." *Id.* She stated that she called the police out of concern for Ms. Notaro, and "the best way [to] protect her, since I am not allowed on [the] property, is to contact the police." *Id.* at 16. Wife maintained that her actions "had nothing to do with harassing [Appellant]." *Id.* She stated that she "was shocked by the contempt petition," and noted she "was not cited [by the police] for doing anything."[3] *Id.* at 14.

At the conclusion of the hearing, the trial court determined Appellant had "not met his burden to justify a contempt finding against [Wife]." *Id.* at 16. That same day, the court entered the order dismissing Appellant's

---

[3] Wife said that she had a copy of the police report and asked the trial court if it wanted to read it. *Id.* at 14. The court declined, stating it would "base my decision on the testimony that you both presented." *Id.*

petition. Appellant filed a timely appeal[4] and a four-page concise statement raising 19 errors.[5] Appellant presents five of the alleged errors for review:

> 1. Did the trial court commit reversible error by refusing to admit properly authenticated text message evidence in violation of Pa.R.E. 901?
>
> 2. Did the trial court err by allowing hearsay testimony while simultaneously excluding Appellant's evidence on the same subject matter?
>
> 3. Did the trial court err as a matter of law by permitting [Wife] to rely on the substance of a police report after expressly declining to admit the report into evidence?
>
> 4. Did the trial court abuse its discretion by repeatedly overruling Appellant's objections without analysis and restricting Appellant's ability to object further during the hearing?
>
> 5. Did the trial court err by denying the Petition for Contempt despite [Wife's] admission under oath that she contacted law enforcement in violation of the Final [PFA] Order?

Appellant's Brief at 3 (unnumbered).

The PFA Act permits a plaintiff to file a petition for civil contempt with the court that issued the PFA order. *See* 23 Pa.C.S. § 6114.1. This Court reviews the trial court's contempt decision for an abuse of discretion. *In re Cullen*, 849 A.2d 1207, 1210 (Pa. Super. 2004). We have explained:

---

[4] An order declining to hold a party in contempt is appealable when the contempt relates to a prior final order. *Schultz v. Schultz*, 70 A.3d 826, 828 (Pa. Super. 2013). Here, the alleged contempt relates to the final PFA order entered on March 6, 2025.

[5] The trial court observed that Appellant's concise statement "is drafted in a format that is frequently commensurate with that of generative Artificial Intelligence," but declined to "advocate the disposition of Appellant's appeal as a result of this procedural defect." TCO at 6.

In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence, that the defendant is in noncompliance with a court order. However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.

To be punished for contempt, a party must not only have violated a court order, but that order must have been "*definite, clear, and specific*-leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. … To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Id.* at 1210–11 (italics in original, citation and footnote omitted).

Preliminarily, we find that Appellant has failed to set forth adequate arguments in support of his alleged errors.[6] Appellant's entire argument is less than two pages. *See* Appellant's Brief at 4-5. For each claim, Appellant submits a few conclusory sentences without any citation to the record. While Appellant cites some legal authority, he does not explain how the rules or cases apply to the contempt proceedings. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa. Super. 2002) (citations omitted); *see also*

---

[6] Wife has not filed a brief.

Pa.R.A.P. 2119(a). "Without a reasoned discussion of the law ..., our ability to provide appellate review is hampered. It is not this Court's function or duty to become an advocate for the appellant." ***Estate of Haiko***, 799 A.2d at 161 (citation and brackets omitted). Accordingly, Appellant's issues are waived. ***See Kaur v. Singh***, 259 A.3d 505, 511 (Pa. Super. 2021) (finding waiver where appellant "fails to properly raise and develop issues in briefs"); ***Commonwealth v. Briggs***, 12 A.3d 291, 343 (Pa. 2011) (finding waiver where appellant "failed to develop or present a proper argument").[7]

Waiver aside, we would conclude that Appellant is not entitled to relief. The trial court has provided a well-reasoned and detailed analysis explaining why any evidentiary claims lack merit. ***See*** TCO at 11-18. In addition, the court found Wife "credible in her attestation of fear for her daughter's well-being." ***Id.*** at 9. The trial court explained:

> [I]t is undisputed that the first and second elements of a contempt analysis are met. [Wife] was aware of the existence of the PFA [o]rder entered on March 6, 2025…. Moreover, the act that constituted her alleged violation of the PFA [order], calling the police … and asking them to go to Appellant's residence, was volitional. As [Wife] said in her testimony, "at that point, I did reach out to the Boyertown Police. I identified myself immediately. I also stated that there was a PFA [order] against

---

[7] Although Appellant is *pro se*, and we are "willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit." ***Commonwealth v. Lyons***, 833 A.2d 245, 251–52 (Pa. Super. 2003). A person who represents himself "must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018).

me at the … property.  I was not permitted to step foot on that property.  I made that very clear, very clear." …

Thus, the main point of contention in determining whether [Wife] was in contempt of the PFA [o]rder is whether her act of calling the police … was done with "wrongful intent." …

[B]ased on [Wife's] testimony, it was clear to the [c]ourt that [Wife's] actions were not made with "wrongful intent" or a desire to contraven[e] the purpose of the PFA [o]rder, but rather with the genuine concern for the well-being of a family member.

*Id.* at 7-8 (citations omitted).

The record supports the trial court's finding that Wife "did everything she could to avoid violating the PFA [order], even when coming to her daughter's aid." *Id.* at 9.  Even in the absence of waiver, we would affirm the dismissal of Appellant's contempt petition.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/26/2026